# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
July 11, 2000 Session

## STATE OF TENNESSEE v. MICHAEL EISOM

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 6607    Joseph H. Walker, III, Judge**

---

**No. W1999-00739-CCA-R3-CD - Filed October 11, 2000**

---

The defendant was convicted by a Lauderdale County jury of attempted second degree murder. The trial court sentenced the defendant to eleven years in the Department of Correction as a Range I, standard offender. In this appeal as of right, the defendant asserts the following errors: (1) that the evidence was not sufficient to convict him; and (2) that his sentence was excessive. After a thorough review of the record, we conclude the evidence was sufficient, as a matter of law, for a rational trier of fact to find the defendant guilty of attempted second degree murder, and the trial court properly sentenced the defendant. We, therefore, affirm the defendant's conviction and sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES, J., and CORNELIA A. CLARK, SP.J., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, Michael Eisom.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; and Elizabeth T. Rice, District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Michael Eisom, appeals as of right from his conviction by a Lauderdale County jury of attempted second degree murder, a Class B felony. The trial court sentenced the defendant to eleven years as a Range I, standard offender, to be served in the Department of Correction. The defendant presents two issues for our review:

> I.    Whether the evidence was sufficient, as a matter of law, to sustain the conviction for attempted second degree murder; and

> II.   Whether the sentence was excessive.

Having reviewed the entire record, we conclude that the evidence was sufficient as a matter of law to sustain the conviction for attempted second degree murder and that the trial court did not err in sentencing the defendant to eleven years. We therefore affirm both the conviction and sentence.

## FACTS

The defendant and the victim met in Halls, Tennessee, and began a relationship in August 1997. The victim, a twenty-four-year-old single mother of two children, ages five and three, was living with her mother and children in a home owned by her uncle. The defendant was nineteen, living with his mother, and receiving SSI payments for a disability based on his mental capacity, which has been recorded in ranges from a low IQ of 55 to a high of 81. The defendant attended special education classes until the tenth grade and has never held a job. He spent a great deal of time at the home of his aunt, who lived across the street from the victim.

On March 3, 1998, the victim sought a protective order enjoining the defendant from coming near or threatening her. The order, issued on March 10, 1998, by the General Sessions Court of Lauderdale County, was based on the victim's assertion that the defendant had assaulted her by punching her in the right eye with his fist. The victim reported at the time that she "was afraid of him," and testified at trial that their relationship ended March 3, 1998. An assault warrant on the defendant was outstanding at the time of the events on which the attempted second degree murder conviction is based.

In the early morning hours of March 23, 1998, the defendant entered the home of the victim through an unlocked back door. At the time, the victim's mother was out of town. The victim's two children were asleep in a bedroom, and the victim was sleeping on a sofa in the living room. The defendant woke the victim, got on his knees, and began rubbing her hand, saying, "My baby don't love me no more. My baby don't love me no more." The victim told the defendant to leave. The victim testified that the defendant said, "Well, if I can't have you, can't nobody else have you." The defendant got a chef's knife from a drawer in the kitchen. The victim testified to what happened next:

> He stabbed me the first time, and I screamed. He covered my mouth. My kids got up and got on the couch. He covered my mouth, threw me on the floor, and then he just proceeded to keep stabbing me. He just did it for a long time. I'm not sure about how long it was, but it just seemed like it was a long time. But he just did it over and over again.
>
> And I was on the floor, and I would like roll over, and he would stab and he would stop for a little while and he would say something. I couldn't understand all of the things that he was saying. But he

stopped and he started back again. He would stop and he would leave out of the room, he'd come back in there and he'd just start.

And once I tried to just act like I was just dead and just lay on the floor and act like I wasn't breathing. And he took my hand he just like picked it up and let it fall down. And he was like, "She's not dead." And then he left out of the room, and that's when I got - - I was able to get up off the floor and get out of the house.

The victim was asked about her children and whether the defendant had any contact with them during the attack. The victim testified to the following:

Well, during, they - - my little girl, she would scream on and off. And my little boy asked him if he was hitting me, why he was hitting me with the knife. He told him no, he wasn't hitting me with the knife, he was just wiping the blood off of the knife.

The victim escaped to the house next door where she made it inside before collapsing. A 911 call brought an ambulance, and then police arrived on the scene. The victim was later airlifted to the Regional Medical Center at Memphis where, over the course of nine days, she accumulated some $52,000 in medical bills, including costs for repair of a complex scalp laceration totaling 30 centimeters in length; repair of complex facial lacerations totaling 33 centimeters in length; and repair of lacerations to the extremities, the chest, the thorax, and the hands. Her body sustained some fifty stab wounds. The defendant was apprehended by police shortly after the attack. He was found hiding under the bed in his aunt's house across the street.

## ISSUES

### I. Sufficiency of the Evidence

The defendant does not deny that he attacked the victim. He argues that the evidence presented to the jury was not sufficient to convict him of attempted second degree murder. He contends that he should have been convicted of attempted voluntary manslaughter instead, because the crime was committed in a state of passion produced by the victim's termination of their relationship.

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App.), perm. app. denied (Tenn. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or

jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt.").

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. app. denied (Tenn. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (Tenn. 1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

At the time this crime was committed in 1998, second degree murder was defined as a "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1) (1997). The Sentencing Commission Comments note that this section "should always be read in conjunction with the first degree murder, voluntary manslaughter and criminally negligent homicide statutes." Id., Sentencing Commission Cmts. Both second degree murder and voluntary manslaughter are "knowing" killings.[1] Voluntary manslaughter is a lesser-included crime of second degree murder that involves the mitigating elements of the defendant's "state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a). It was a question for the jury whether the defendant's acts were a "knowing" attempt to commit second degree murder or whether he was acting under "adequate provocation." State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995).

In the light most favorable to the State, the evidence showed that the defendant had been walking up and down the street opposite the victim's house on the day before the attack; that he

---

[1]"'Knowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-106(a)(20).

came into the victim's home in the early morning hours of March 23, 1998; that he took a knife from a drawer in the kitchen; and that he brutally attacked the victim while her children watched, stabbing her continuously with the knife until she was able to escape. The evidence showed that he stopped the stabbing periodically and even spoke to the victim's children. The evidence showed that the defendant left the house through the back door and then hid under a bed in his aunt's home across the street.

The defendant argues that he is "so limited that his reasoning powers must be taken into consideration in deciding what his state of mind was at the time of the offense." The defendant draws an analogy to insanity cases but did not argue insanity as a defense at trial. In fact, the expert proof at trial was that the defendant was not insane at the time of the offense and was competent to stand trial. The defendant also points to the prohibition of the death sentence where the defendant is mentally retarded. However, the proof was that the defendant, though admittedly of low intelligence, still had a driver's license; drove a car; handled at least $100 a month of allowance; bought gifts; procured marijuana and beer; and was generally free to spend his day as he chose. The defendant also admitted to being the father of a three-year-old child.

We conclude that the evidence was sufficient to prove beyond a reasonable doubt that the defendant attempted to commit second degree murder and, therefore, we affirm the conviction.

## II. Sentence

The defendant contends that the trial court imposed an excessive sentence. The sentencing range for attempted second degree murder for a Range I, standard offender is eight to twelve years. The defendant received a sentence of eleven years. The defendant asserts that his sentence should have been at the low end of the range.

Appellate review of sentencing is *de novo* on the record with a presumption that the trial court's determinations are correct. See Tenn. Code Ann. §§ 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), perm. app. denied (Tenn. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; see also Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous. This means that if the trial court followed the

statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In this respect, the weight to be afforded any existing enhancement or mitigating factor is left to the trial court's discretion. See Tenn. Code Ann. § 40-35-210, Sentencing Commission Cmts. (noting the statute's purpose of maintaining "judicial discretion necessary to make individualized sentencing determinations").

The record reflects that the trial court considered the evidence heard at trial, the evidence heard at the sentencing hearing, the investigation report prepared by the Department of Correction, the victim impact statement, the principles of sentencing, the statements of counsel, and the nature and characteristics of the criminal conduct. The defendant testified on his own behalf at the sentencing hearing.

In sentencing the defendant, the trial court found no applicable statutory mitigating factors among those listed in Tennessee Code Annotated Section 40-35-113(1) - (12). The defendant argues that the trial court should have applied factor (8), which states: "The defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor[.]" Tenn. Code Ann. § 40-35-113(8). Although the trial court did not apply factor (8), it did consider the mental condition of the defendant. The trial court stated, "The Court finds in mitigation that the defendant has been in Special Education classes while in school, he was transferred to the Department of Youth Development which determined that he had a learning disability, he has a clinical record that shows he's functionally illiterate with an IQ of 81." Although the trial court did not specifically reference "catchall" factor (13), according to that factor, the trial court may consider "[a]ny other factor consistent with the purposes of this chapter." Id. § 40-35-113(13). The trial court did, therefore, consider the mental condition of the defendant but gave it little weight.

As to enhancing factors, the trial court applied three, each of which is challenged by the defendant. The trial court applied the following statutory enhancement factors:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> (6) The personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great;
>
> (9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense[.]

Tenn. Code Ann. § 40-35-114(1), -(6), -(9).

The defendant challenges the application of factor (1) based on the fact that the defendant's juvenile record showed acts that were of a "general, unexplained nature, and none of which were shown to have constituted a felony if committed by an adult." Although the defendant cites factor (20),[2] in arguing that his previous criminal record should not be a sentencing consideration, the presentence report shows that he has had a number of misdemeanor convictions since becoming eighteen years of age. These convictions were for evading arrest (two separate cases), possession of marijuana (two separate cases), possession of a deadly weapon, failure to appear, reckless driving, theft under $500, underage possession of alcohol, and resisting arrest. Accordingly, the trial court found that the defendant had a previous history of criminal behavior and convictions in addition to those necessary to establish the appropriate range, and sentenced the defendant as a Range I, standard offender. The trial court properly applied enhancement factor (1) in light of the defendant's extensive record of misdemeanor convictions. State v. Norris, 874 S.W.2d 590, 601 (Tenn. Crim. App.), perm. app. denied (Tenn. 1993).

The defendant challenges factor (6), the seriousness of the injuries inflicted on the victim, relying on State v. Makoka, 885 S.W.2d 366, 374 (Tenn. Crim. App. 1994). The defendant argues that, even though Makoka did not deal with factor (6) at all, the reasoning in that case should apply by analogy to the defendant's case and disallow the application by the trial court of enhancement factor (6). Basically, the defendant argues that serious bodily injury is inherent in the crime of attempted second degree murder and therefore the court erred in applying factor (6). However, the defendant's argument in this regard is contrary to the law. State v. Alexander, 957 S.W.2d 1, 7 (Tenn. Crim. App.), perm. app. denied (Tenn. 1997) ("[P]ersonal injuries, great or small, are not an element of attempted murder."); State v. Thomas R. Baldwin, No. 01C01-9612-CR-00530, 1998 WL 426199 (Tenn. Crim. App., Nashville, July 29, 1998), perm. app. denied (Tenn. Feb. 16, 1999) (enhancement factor (6) applied to sentence for conviction of attempted second degree murder).

Here, the victim suffered serious bodily injuries, as set forth above, some of which caused significant disability.[3] Our supreme court has held that "proof of serious bodily injury will always constitute proof of particularly great injury." State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994). We conclude that the victim suffered particularly great injury, and this enhancement factor was properly applied.

The defendant fails to argue specifically why the trial court erred in applying enhancement factor (9), that the defendant employed a deadly weapon. Therefore, this issue is waived. However, we note that a chef's knife was entered into evidence at trial as the weapon used in the attack without objection. We conclude that the knife was a deadly weapon, and, therefore, factor (9) was appropriately applied to enhance the defendant's sentence.

---

[2] Enhancement factor (20) is: "The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." Tenn. Code Ann. § 40-35-114(20).

[3] The victim testified to the following: "Well, I can't - - like my left eye won't blink, and the left side of my head is numb, I can't feel anything. And it's like I have a taste but I can't really tell like different - - the full flavor of different foods, it's not the same."

A portion of the Sentencing Reform Act of 1989, codified at Tennessee Code Annotated Section 40-35-210, established specific procedures to be followed in sentencing. At the time of the defendant's sentencing hearing in 1999, this section provided that the minimum sentence within the range was the presumptive sentence for Class B, C, D, and E felonies. If there are enhancement and mitigating factors, the trial court must start at the presumptive sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. The weight to be given each factor is left to the discretion of the trial court. See State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992), perm. app. denied (Tenn. 1993).

Here, the court found that the enhancement factors, all of which we have determined were properly applied, greatly outweighed the mitigating factor of the defendant's low mental ability. The trial court began with the presumptive sentence of eight years and found that it should be enhanced to eleven years as a standard offender. The trial court went on to state why it felt confinement was particularly suitable in this case, according to Tennessee Code Annotated Section 40-35-103(1)(A)-(C). The trial court found confinement necessary to protect society by restraining the defendant and also necessary to "avoid deprecating the seriousness of this offense."[4] The trial court also found confinement necessary to provide an effective deterrence, "in that the defendant has been tried in the past on suspended sentences through Sessions Court that have proved not to be successful."

As to protecting society, the defendant's mental evaluation conducted at Western Mental Health Institute included the results of the Millon Clinical Multiaxial Inventory, which evaluated the defendant as follows:

> According to the report he has disdain for the welfare of others with nonempathic, prejudiced, and self-centered attitudes. He has a socially intimidating manner and has voiced pride in his self reliance, unsentamentality, and competitive values. . . . He is characteristically touchy and jealous and is often inclined to brood and harbor grudges. He is easily provoked and can express sudden and unanticipated brutality. He has the desire to provoke fear and to intimidate others to overcome his sense of inner weakness and to vindicate past injustices.

The record showed a history of criminal activity.

While the trial court did not make a specific finding concerning the seriousness of the crime, the record showed that the defendant's crime was an escalation of a previous domestic assault. The

---

[4]We acknowledge the trial court's use of "deprecating," as used with connotative accuracy in the Criminal Sentencing Reform Act of 1982, rather than "depreciating" as found in the current version of Tennessee Code Annotated Section 40-35-103(1)(B).

defendant committed a violent attack on an unarmed woman in the presence of children. Such an act requires punishment of equal seriousness.

As to the fact that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant," the record showed that, although a protective order had been in place prohibiting the defendant from any contact with the victim, he not only perpetrated the attempted second degree murder at issue here, but while on bond for the present crime, the defendant continued to harass the victim. The defendant argues, nevertheless, that nothing in the record shows that the defendant ever violated any order of probation. The defendant's juvenile convictions, including theft under $500 when he was twelve, and three charges of assault and battery, all included some form of probation or home detention. By age eighteen, the defendant had added another conviction for theft under $500, possession of alcohol under age, and resisting arrest, apparently without ever serving any time in incarceration. By age nineteen, the defendant had added convictions for marijuana possession, reckless driving, evading arrest, failure to appear, and possession of a deadly weapon. His sentences were suspended; he was ordered repeatedly to pay fines; and he was ordered to turn a weapon over to the sheriff's department. There is substantial evidence in the record to support the trial court's determination that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

The trial court recommended the defendant for mental health treatment while in the Department of Correction.

We conclude that the trial court appropriately applied three enhancement factors and appropriately weighed the defendant's mental condition in mitigation. The sentence of eleven years as a standard offender, to be served in confinement, is proper in this case.

## CONCLUSION

The evidence is sufficient as a matter of law to support the defendant's conviction for attempted second degree murder. The sentence imposed for this offense is appropriate. For the reasons set out in the discussion above, we conclude that the defendant's issues on appeal lack merit, and therefore, his conviction and sentence are hereby affirmed.

_____
ALAN E. GLENN, JUDGE