**STATE of Tennessee, Appellee,**

v.

**William H. ALEXANDER, Appellant.**

Court of Criminal Appeals of Tennessee,
at Nashville.

March 13, 1997.

Permission to Appeal Denied by
Supreme Court Nov. 17, 1997.

Michael R. Jones, Public Defender, Springfield, for Appellant.

Charles W. Burson, Attorney General & Reporter, Michael J. Fahey, II, Asst. Attorney General, Nashville, John W. Carney, District Attorney General, Dent Morriss, Asst. District Attorney General, Springfield, for Appellee.

## OPINION

PEAY, Judge.

The defendant was convicted by a jury of attempted first-degree murder and theft of property over one thousand dollars ($1000). After a hearing, the trial court sentenced the defendant to the Department of Correction for twenty-five years as a Range I standard offender on the attempted murder and for three years on the theft, to run consecutively. On this direct appeal, the defendant contends that the evidence was not sufficient to support his conviction for attempted first-degree murder and that his sentences are excessive. After a review of the record, we affirm the judgment below.

The proof at trial established that the victim, Rebecca Ann Hudson, opened the Fish Market Restaurant in Nashville, Tennessee, in September 1994. The defendant worked in the restaurant as a busboy and dishwasher for a few weeks after it opened. His girlfriend, Oberline Rone, was also employed there, continuing to work in the restaurant after he left.

The victim lived in Robertson County in a two-story log cabin. Her daughter, Francis Hudson, lived in Colorado but was spending weeks at a time with her mother, helping her with the restaurant and at the house. On four occasions, Francis had taken Rone with her to the cabin to help with unpacking various household items. The defendant was not invited on these trips and, to the best of the mother's and daughter's knowledge, had never been to the cabin.

On December 23, 1994, Francis was in Tennessee staying with her mother. That night, the victim and her daughter went to bed at about midnight in the same bedroom on the ground floor of the cabin. After they both fell asleep, the victim awoke, thinking that she had heard a noise. She sat up in bed and retrieved the 38 pistol she kept

nearby, pointing it in the direction of the door as she listened for further sounds. Not hearing anything else, she rose to go to the adjoining bathroom. After laying down the pistol and using the bathroom, she thought she heard another noise. Without retrieving her pistol, she proceeded from the bathroom through the dressing room and from there took a step or two into the hall. At that point, she saw the defendant leaping at her with his arms raised holding a knife in one hand and a claw hammer in the other.

The defendant attacked the victim, hitting her in the head and body with the hammer and stabbing her with the knife. The victim testified that she had "received several knife wounds to the face and a couple of deep stab wounds to the body." During the attack, she screamed to her daughter to call 911. Eventually, she was knocked unconscious by a blow to the side of her head and collapsed to the floor.

The defendant left the victim after she went down and she regained consciousness some minutes later. She was able to pull herself up off of the floor and make her way to the bedroom to check on her daughter. She found Francis hiding under the bed with the phone. The two then made their way into the bathroom and closed and locked the doors. No further attack on them was made, although they continued to hear noises in the house.

Francis testified that, during the attack, she had seen feet and hands in the bedroom from her vantage point under the bed. She and her mother both testified that, after the attack, they had heard noises consistent with more than one person in the house. The victim identified the hammer used in the attack as hers, and Francis testified that she had left it in the den on top of the stereo. The knife was not identified but was described as having a blade six to eight inches long. The physician who treated the victim in the emergency room testified that, although the specific injuries had not been life-threatening in and of themselves, the attack was one which "could have taken her life." Following the attack, the victim discovered that cash, silver, guns, a mink coat, jewelry, and other personal property had been stolen from her house.

The defendant contends that the evidence at trial established no more than attempted second-degree murder because the State failed to prove the elements of premeditation and deliberation required for attempted first-degree murder. We disagree.

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "*any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*" *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. *Cabbage*, 571 S.W.2d 832, 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).

At the time these crimes were committed in 1994, first-degree murder was defined as an "intentional, premeditated and deliberate killing of another." T.C.A. § 39-13-202(a)(1) (1994 Supp). A deliberate act was "one performed with a cool purpose," and a premeditated act was "one done after the exercise of reflection and judgment." T.C.A. § 39-13-201(b)(1) & (2) (1991). Thus, if the evidence was sufficient to prove beyond a reasonable doubt that the defendant intentionally tried to kill the victim "with a cool purpose" and "after the exercise of reflection and judg-

ment," then his conviction is proper. *See* T.C.A. § 39–12–101(1991).[1]

In *State v. Brown*, 836 S.W.2d 530 (Tenn. 1992), our Supreme Court took great pains to clarify the concepts of premeditation and deliberation, and to stress their significance in distinguishing first-degree murder from second-degree murder. It reiterated early case law holding that " 'the deliberation and premeditation must be akin to the deliberation and premeditation manifested where the murder is by poison or lying in wait—the cool purpose must be formed and the deliberate intention conceived in the mind, in the absence of passion, to take the life of the person slain.' " *Brown*, 836 S.W.2d at 539, *quoting Rader v. State*, 73 Tenn. 610, 619–20 (1880). Thus, where the intent to kill is formed during a deadly struggle, the proof would support only a conviction for second-degree murder unless the State could show that premeditation and deliberation had preceded the struggle. *Id.* at 542. The *Brown* court also recognized that premeditation and deliberation could be established by circumstantial evidence, including " 'that a deadly weapon was used upon an unarmed victim; ... that the killing was particularly cruel; [and] that weapons with which to commit the homicide were procured.' " *Brown*, 836 S.W.2d at 541 (citation omitted).

■ In this case, the nature of the defendant's attack on the victim was sufficient to prove that he intended to kill her. The circumstances of the crime are also sufficient to prove premeditation and deliberation. The strongest legitimate view of the proof and the reasonable inferences which may be drawn therefrom are that the defendant broke into the victim's house in the dead of night for the purpose of stealing her property. At some point during the intrusion, the defendant heard someone using the bathroom. Realizing that he might be apprehended, the defendant had two choices for avoiding capture: leave the house or, in the

State's words, "eliminat[e] the witness." Clearly, the defendant chose the latter course of action. In accord with his choice, the defendant proceeded to arm and position himself so as to attack the victim by surprise. When the victim stepped in front of him, he already had his arms raised in preparation and proceeded to strike and stab her multiple times with the hammer and knife.

The defendant's decision to attack the victim, and his subsequent actions taken to effectuate his decision, were not made in the midst of a fight, confrontation, or other situation which might reasonably be expected to produce the type of excitement or passion which may negate the elements of premeditation and deliberation. Rather, they were made by someone determined to commit a burglary and theft and to get away with it, even if it meant killing someone.

The defendant's citation to *State v. James M. Coggins, Jr.*, C.C.A. No. 01C01–9310–CR–00360, Davidson County, 1994 WL 390445 (Tenn.Crim.App., filed July 28, 1994, at Nashville), is not persuasive. In that case the defendant accosted the victim with a knife as she got into her car, telling her "Move over, don't say a word or I'll cut you." The victim looked at him, he repeated the command, and she then jumped up and pushed him. A struggle ensued, in which two passersby joined, during which the defendant stabbed the victim repeatedly. Our Court held that, under those circumstances, there was not sufficient proof of premeditation and deliberation. In the instant case, the defendant's decision to stab and strike the victim was made prior to any confrontation and prior to any response by the victim.

Similarly, the defendant's reliance on *State v. James Dumas*, No. 02C01–9502–CR–00031, Shelby County, 1995 WL 580931 (Tenn.Crim.App., filed October 4, 1995, at Jackson), and *State v. Boyd*, 909 S.W.2d 50 (Tenn.Crim.App.1995), is misplaced. The

---

1. A person commits attempted first-degree murder "who, acting with the kind of culpability otherwise required for [first-degree murder]: ... (2) Acts with intent to cause [the death] ..., and believes the conduct will cause the [death] without further conduct on the person's part; or (3) Acts with intent to complete a course of action or cause a result that would constitute the [murder], under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the [murder]." T.C.A. § 39–12–101(a) (1991).

proof in *Dumas* demonstrated "a drug deal gone bad" in which the defendant shot the victim following the defendant's unsatisfied demand for twenty dollars from the victim. In *Boyd*, the defendant shot the victim after having endured a lengthy period of verbal sexual harassment. There was proof that the defendant had finally gotten so mad that she lost control of herself and shot the victim while in a fit of passion.

All of these cases involved some interaction between the defendant and the victim which gave rise to a fit of excitement or passion *during which* the intent to kill was formed. The State simply did not supply sufficient proof of a *prior* determination to kill, made while the defendant's mind was calm and capable of cool reflection. Here, the State *did* supply sufficient proof. This issue is without merit and we affirm the defendant's conviction for attempted first-degree murder.

The defendant next contends that his sentences are excessive. Specifically, he contends that the trial court erred when it applied certain enhancing factors and that his sentences should not be run consecutively.

■ When a defendant complains of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. T.C.A. § 40–35–401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40–35–401(d) Sentencing Commission Comments. This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991).

A portion of the Sentencing Reform Act of 1989, codified at T.C.A. § 40–35–210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

(1) The evidence, if any, received at the trial and the sentencing hearing; (2)[t]he presentence report; (3)[t]he principles of sentencing and arguments as to sentencing alternatives; (4)[t]he nature and character-

istics of the criminal conduct involved; (5)[e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40–35–113 and 40–35–114; and (6)[a]ny statement the defendant wishes to make in his own behalf about sentencing.

T.C.A. § 40–35–210.

■ In addition, this section provided at the time of the defendant's sentencing hearing that the minimum sentence within the range was the presumptive sentence. If there are enhancing and mitigating factors, the court must start at the presumptive sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no mitigating factors, the court may set the sentence above the presumptive sentence in that range but still within the range. The weight to be given each factor is left to the discretion of the trial judge. *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn.Crim.App.1992).

The Act further provides that "[w]henever the court imposes a sentence, it *shall place on the record* either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40–35–209." T.C.A. § 40–35–210(f) (emphasis added). Because of the importance of enhancing and mitigating factors under the sentencing guidelines, even the absence of these factors must be recorded if none are found. T.C.A. § 40–35–210 comment. These findings by the trial judge must be recorded in order to allow an adequate review on appeal.

In setting the defendant's sentence for the attempted murder offense, the trial court applied as enhancing factors that the defendant was a leader in the commission of this offense involving two or more criminal actors; that this offense involved more than one victim; that he treated a victim with exceptional cruelty during the commission of this offense; and that he used a deadly weapon during its commission. T.C.A. § 40–35–114(2), (3), (5) & (9). The court specifically rejected application of the enhancement factor for inflicting particularly great personal

injuries[2] on the theory that this factor was an element of the offense of attempted murder.

The court also took into consideration as mitigating factors that the defendant had no prior criminal history, had expressed remorse, and had had a serious cocaine problem at the time the crime was committed. However, the court also found that the enhancement factors far outweighed the mitigating factors, rendering the maximum sentence of twenty-five years appropriate.

■ The trial court's determination that the defendant was a leader in the commission of the attempted murder was, we think, error. While there was proof that more than one person was in the house during the attack upon the victim, there was no proof that anyone else was involved in the attempted murder itself. Thus, there were no others involved for the defendant to "lead." Accordingly, this enhancement factor should not have been applied. We also find that the court below erred in enhancing the defendant's sentence on the basis that there was more than one victim of the attempted murder. The court applied this enhancement factor on the basis that the victim's daughter heard the attack on her mother and thereby "suffered ... in ways that will never be corrected." While we sympathize with the victim's daughter and in no way ignore the horror she must have experienced during the attack, this Court has previously determined that this enhancing factor is not applicable under these circumstances. Rather, each victim must have been "injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime." *State v. Raines,* 882 S.W.2d 376, 384 (Tenn.Crim.App. 1994). The psychological injuries suffered by relatives witnessing an attack on the actual victim are not covered by this interpretation of the word "victim." *See, e.g., State v. Charles N. Howell,* No. 03C01-9406-CR-00203, Knox County, 1996 WL 55651 (Tenn. Crim.App. filed Feb. 12, 1995, at Knoxville) (enhancement factor for more than one victim not applicable where daughter witnessed stepfather shooting and killing mother).

■ The defendant contends that the court below also erred when it determined that he treated the victim with exceptional cruelty. We disagree. The proof at trial established that the defendant stabbed her several times in the face, including cuts through both eyelids, stabbed her twice in her body, and beat her in the head and arms with the claw hammer. She testified that these wounds were "very painful." These injuries required the victim to have surgery, including the removal of a piece of her skull; caused partial facial paralysis and nerve damage; chronic headaches lasting five to six days; continuing problems with one of her eyes; and continuing shoulder pain. The victim also testified that the defendant had kicked her after she fell to the floor. Not only was the attack vicious, these actions go far beyond what is required in order to establish an attempted first-degree murder and justify application of this enhancement factor. *See, e.g., State v. Holland,* 860 S.W.2d 53, 61 n. 18 (Tenn.Crim.App.1993) (battering of victim all over her body, including a blow to her head causing initial suspicion of fractured skull, justified application of enhancement factor for exceptional cruelty in offenses of aggravated rape and aggravated burglary); *State v. Cedric E. Stampley,* C.C.A. No. 02C01-9409-CR-00208, Shelby County, 1996 WL 465557 (Tenn.Crim.App. filed Aug. 16, 1996, at Jackson) (infliction of numerous wounds in an attempted murder satisfies the factor of exceptional cruelty); *cf. Manning v. State,* 883 S.W.2d 635, 639 (Tenn.Crim.App.1994) (enhancement factor for exceptional cruelty inapplicable in aggravated rape and aggravated kidnapping where the actions of the defendant, while cruel, were those relied upon to establish the aggravated nature of the crimes). Thus, we hold that the enhancement factor for exceptional cruelty was properly applied in this offense.

■ While we hold that the court below erred in applying two enhancement factors, we also find that an additional enhancement factor should have been applied. The court below refused to apply as an enhancement factor that the defendant inflicted particular-

---

2. T.C.A. § 40-35-114(6).

ly great personal injuries on Mrs. Hudson on the grounds that this was an element of the offense. However, personal injuries, great or small, are not an element of attempted murder. For instance, a defendant may shoot multiple times at an intended victim, missing each and every time, and still be guilty of attempted murder. Here, as set forth above, the victim suffered numerous serious wounds, some causing permanent damage. Our Supreme Court has held that "proof of serious bodily injury will always constitute proof of particularly great injury." *State v. Jones*, 883 S.W.2d 597, 602 (Tenn. 1994). The victim here suffered serious bodily injuries [3] and this enhancement factor is properly applicable. *See also State v. Cedric E. Stampley*, C.C.A. No. 02C01–9409–CR00208, Shelby County, 1996 WL 465557 (Tenn.Crim.App. filed August 16, 1996, at Jackson) (enhancement factor for particularly great injuries properly applied where victim sustained three gunshot wounds to his hand causing permanent disability, suffered a gunshot wound to his hip, and an abdominal wound causing nerve damage). Thus, this enhancement factor should have been applied.

■ As noted previously, the proof also established that the defendant had a cocaine problem at the time these offenses were committed. Thus, the enhancement factor for previous criminal behavior was also properly applicable. T.C.A. § 40–35–114(1) (1990). Therefore, four enhancement factors properly applied to this defendant in the commission of this crime, and we heartily agree with the court below that the enhancement factors overwhelmed the mitigating factors. The maximum sentence for the attempted murder was proper.

■ With respect to the theft offense, the court below applied as enhancement factors that the defendant was the leader in the commission of this offense; that there was

more than one victim; and that he used a deadly weapon in its commission. T.C.A. § 40–35–114(2), (3) & (9). As explained above, there was proof of other persons being in the house during the break-in. However, we disagree that there was any evidence establishing that the defendant was the leader in committing the theft. This factor is not applicable. Nor did the theft involve more than one victim. The proof established that all of the property stolen belonged to Mrs. Hudson; none was stolen from her daughter. Thus, this enhancement factor should not have been applied. The enhancement factor for using a deadly weapon was properly applied. The commission of the theft offense was facilitated by the defendant's attack on the victim with a knife and claw hammer. Both of these instruments qualify as deadly weapons. We also find that the court below should have applied the factor for willful infliction of bodily injury during the commission of the theft, for the same reason. T.C.A. § 40–35–114(12). We further find that when a theft is committed by breaking into a person's house in the dead of night under circumstances in which it is reasonable to assume that the person is home, the *potential for bodily injury* to a victim is great. T.C.A. § 40–35–114(16). Thus, this enhancement factor should also have been applied.

■ The trial court applied the same mitigating factors that it considered in the attempted murder offense, and weighing the enhancement factors against the mitigating factors, determined upon a mid-range sentence of three years. Given our application of different, but more numerous, enhancement factors, we find this sentence to be proper.[4]

Finally, the defendant contends that his sentences should be run concurrently and not consecutively. The trial court found consecutive sentences proper on the grounds that

---

3. "Serious bodily injury" is defined as injury involving a "substantial risk of death; ... [p]rotracted unconsciousness; ... [e]xtreme physical pain; ... [p]rotracted or obvious disfigurement; or ... [p]rotracted *loss or substantial impairment* of a function of a bodily member, organ or mental faculty." T.C.A. § 39–11–106(33) (1991).

4. Indeed, the sentencing proof would have supported the maximum sentence of four years. However, because the State did not raise this issue, we cannot increase the defendant's sentence. *See* T.C.A. §§ 40–35–401(c); 40–35–402(c); T.R.A.P. 13(b).

"this defendant is a dangerous offender whose behavior indicates little or no regard for human life and has no hesitation about committing a crime in which the risk to human life is high. To attack a defenseless woman in her home with a clawhammer and a knife adequately in my view meets that description." The court below also specifically found that the defendant had acted with "a meanness of spirit."

 While the trial court did not make a specific finding that the terms imposed were reasonably related to the severity of the committed offenses, nor that consecutive terms were necessary in order to protect the public from further criminal acts by this defendant,[5] we find that the facts adduced at the trial and sentencing hearing support such findings. This defendant committed the very acts which place citizens in the greatest fear: he broke into a home in the middle of the night for the purpose of stealing personal property and, in the midst of his theft, vi-

ciously attacked the unarmed resident, doing his best to hammer and stab her to death. These offenses were very severe and warrant long terms of confinement. Moreover, that the defendant may have been high on crack cocaine at the time he committed these heinous deeds only heightens the danger that, once he has access to cocaine again, he will commit similar crimes. The public not only needs to be protected from a defendant willing to commit these sorts of crimes: it deserves to be so protected. The imposition of consecutive sentences in this case is proper.

The judgment below is affirmed.

WELLES and SMITH, JJ., concur.

---

5. See State v. Wilkerson, *905 S.W.2d 933, 938*    *(Tenn.1995).*