# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
February 2000 Session

## STATE OF TENNESSEE v. DANIEL CHRISTIAN RUSSELL

**Direct Appeal from the Circuit Court for Wilson County**
**Nos. 98-1204, 98-2253      J. O. Bond, Judge**

---

**No. M1999-00202-CCA-R3-CD - Filed July 27, 2000**

---

The appellant, Daniel Christian Russell, referred herein as "the defendant," appeals as of right from the judgment of the Wilson County Circuit Court imposing concurrent sentences for aggravated assault and vandalism. The trial court imposed sentences totaling five (5) years to be served concurrently in the Department of Correction. The defendant presents two appellate issues: 1) whether the length of the sentences imposed by the trial court are excessive; and 2) whether the trial court erred by denying the defendant's request for probation. Because the defendant received illegal concurrent sentences, we vacate the judgments of conviction and remand the case for further proceedings.

**Tenn. R. App. P. 3; Judgments of the Circuit Court are Vacated and Remanded.**

L. TERRY LAFFERTY, SR. J., delivered the opinion of the court, in which JOSEPH M. TIPTON, J., and DAVID H. WELLES. J., joined.

Steve McEwen, Mountain City, Tennessee, Comer L. Donnell and Virginia M. Townzen, Lebanon, Tennessee, for the appellant, Daniel Christian Russell.

Paul G. Summers, Attorney General and Reporter, and Marvin E. Clements, Jr., Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

In indictment No. 98-1204, the Wilson County Grand Jury charged the defendant with two counts of aggravated assault and attempted murder first degree of Brian Potts ("the victim"), on June 8, 1998. In indictment No. 98-2253, A, B, and C, the Wilson County Grand Jury accused the defendant of aggravated burglary of the habitation of Linda Slaughter, vandalism by damaging the contents of the habitation of Linda Slaughter, and resisting arrest on September 12, 1998. On March 31, 1999, the defendant entered open ended pleas of guilty to aggravated assault, vandalism over the value of one thousand dollars ($1,000), and resisting arrest. As part of the plea agreement, the State would enter a *nolle prosequi* to the charges of attempted murder first degree, aggravated burglary, and possession of a Schedule I controlled substance. As to the facts surrounding the offenses, the

State advised the trial court that the defendant was in the home of the victim on June 8, 1998. The defendant placed a pool ball in a sock and struck the victim in the head, causing him serious bodily injuries, including a skull fracture, black eyes, a swollen cheek, scratches and cuts to his shoulder, and a broken ring finger on the victim's left hand. As to the vandalism, the State advised the Court that the defendant was in a highly intoxicated state from alcohol or drugs when he broke into the home of Linda Slaughter and caused over one thousand dollars ($1,000) in damage.

## SENTENCING HEARING

Ronald Joines, a probation officer, testified that he talked to the seventen-year-old victim, whose version of the assault was consistent with that of the defendant. Joines testified that the victim incurred over twenty thousand dollars ($20,000) in medical bills, and lost five (5) months of employment from his injuries as a result of the attack. Joines stated that the defendant told him that he thought the victim had stolen his wallet, but later realized that he had left his wallet at the victim's home. Joines stated that three (3) months after the assault of Potts, the defendant burst into the home of Linda Slaughter ("owner"), who shot the defendant when he came back and tried to break in her front door. The owner did not know the defendant. Damage to the owner's home totaled approximately three thousand two hundred six dollars and seven cents ($3,206.07). The defendant told Joines that he had several drug charges and has used marijuana, LSD, Valium, Zanax, and various pills. As to the vandalism charge, the defendant could not recall if he was on drugs at the time. Joines stated that when the defendant was arrested for vandalism, he had LSD in his possession.

Joines advised the trial court that in 1998, the defendant was arrested for possession of a weapon with intent to go armed. He received a ten-dollar ($10) fine and thirty (30) days incarceration with fifteen (15) days suspended. As a juvenile, the defendant was charged with possession of a weapon, but this offense was dismissed on November 21, 1995. The defendant was instead found guilty of possession of marijuana and truancy and was transferred to the Department of Youth Services. Joines testified that the defendant obtained a GED at Lebanon High School and worked for Rich's Electric Service. In cross-examination, Joines corrected his testimony about the defendant being committed to the Department of Youth Services by stating that the defendant was put with the Department of Human Services for psychological treatment. The defendant's placement with the Department of Human Services was not for criminal acts. Joines testified that the defendant did not violate any conditions of probation as a juvenile.

Linda Slaughter ("owner"), testified that it would cost three thousand one hundred and thirty-one dollars ($3,131) to repair her home. She stated that she had never seen the defendant before he forced his way into her home. The pre-sentence report established that the owner was sitting on the couch at her home when the defendant broke through her back door and ran through her house to the front door. The defendant then turned around and ran out the back door. He subsequently tried to break in the front door, when Mrs. Slaughter grabbed a .25 caliber handgun and shot through the door, striking the defendant in the left inner thigh. During the arrest, the defendant made several attempts to flee. He became so aggressive that the deputies placed leg shackles on him. The

defendant's pupils were enlarged and unresponsive to light. Deputies found a folded piece of aluminum foil with a reddish-brown substance in the defendant's possession.

Heather Potts, mother of victim Brian Potts, testified that their medical bills exceeded twenty thousand dollars ($20,000). She stated that she knew nothing about the defendant's wallet.

Sara Russell, the defendant's grandmother, testified that her grandson has lived with her and his grandfather off and on. She described the defendant as a kind, gentle, sweet person. She stated her belief that his crimes were totally out of character. Although her grandson had stated in a pre-sentence report that his childhood had been normal, this was not true. The grandmother stated that the defendant's father and mother were divorced, and her son's second wife had a nervous breakdown. She described her grandson as very remorseful for what he had done. She stated that the defendant has worked steadily so he could go to college. Mrs. Russell testified that she did not know her grandson had used drugs, but that he was not living with them when these offenses occurred.

Paul Markahn testified that he has known the defendant for about nine (9) years. The defendant had been a friend of Mr. Markahn's sons since the sixth (6th) grade. At the time of the offenses, the defendant was living with Mr. Markahn off and on. He did not consider the defendant to be a violent person and stated that the defendant could live with him if given probation. In cross-examination, Mr. Markahn stated that, years ago, the defendant had spoken of violent feelings, but that he had never seen the defendant take action on those feelings.

Arlene Markahn testified that she has known the defendant since he was in the sixth (6th) grade with her two sons. She stated that the defendant was very kind, very respectful, and like a brother to her sons. She testified that she and her husband were separated at the time of the criminal offenses.

Douglas Russell, the defendant's father, testified that the defendant's home life was not normal. He stated that he and his wife divorced when the defendant was four and one-half (4-1/2) years old. The mother moved away to Florida and had very little contact with the defendant. Mr. Russell testified that he remarried when the defendant was nine (9) years old. After six months of marriage, his second wife had a breakdown and developed severe mental problems. At age twelve (12), the defendant's girlfriend had taken a large amount of pills in an attempt to commit suicide. As a result, the defendant drank some of his father's turpentine. As for the juvenile weapon charge, Mr. Russell testified that his son had a pocket knife in his jacket, which was found at school. The knife had been given to the defendant as a gift by Mr. Potts.[1] He stated that the defendant was in the tenth (10th) grade at the time and was placed on probation under house arrest. Mr. Russell testified that he worked twelve (12) hours a day, a situation which left the defendant home alone. This home restriction began to bother the defendant. Mr. Russell stated that his son was talking to a friend on the phone when the friend suggested to the defendant that if he said he would hurt somebody, they

---

[1] It is unclear from the record whether this "Mr. Potts" was the victim of the assault, Brian Potts, or his father.

would put him in an institution where other people would be around all the time. He stated that his son was sent to an institution for thirty (30) days and then returned home. Mr. Russell testified that his son's violent actions were totally out of character. As to the missing wallet, he stated that the police would not do anything about it, so his son took matters into his own hands. Mr. Russell testified that he did not know that his son used drugs.

Sergeant Eddie Fitzpatrick of the Wilson County Sheriff Department, testified that the defendant had been in custody since September 13, 1998. The defendant had no write-ups or violations of rules or regulations and never complained.

The defendant elected not to testify, but the pre-sentence report, marked as an exhibit to the hearing, contains the defendant's version of the offenses. "My version of what I have done is unexplainable and [i]nexcusable. I gravely regret what I have done." In imposing sentences of five (5) years for aggravated assault, four (4) years for vandalism, and eleven (11) months and twenty-nine (29) days for resisting arrest, to be served concurrently, the trial court found six (6) enhancement factors and no mitigating factors. Based upon the pre-sentence report, the victim impact statements, and the record, the trial court found the defendant to be a dangerous person for a number of years. The trial court denied split confinement as an alternative, because the defendant would be back out into society too soon.

## LEGAL ANALYSIS

The defendant asserts that the trial court erred in finding inapplicable enhancement factors and no mitigating factors in its imposition of sentences of five (5) years for aggravated assault and four (4) years for vandalism. Further, the defendant contends that the sentence of eleven (11) months and twenty-nine (29) days is invalid, in that the defendant is guilty of a Class B misdemeanor for resisting arrest, since a deadly weapon was not used in the commission of this offense. The State counters that there is ample evidence in the record to support the trial court's imposition of incarceration but concedes that the trial court erred in imposing a sentence of eleven (11) months and twenty-nine (29) days for resisting arrest. The State agrees that the defendant did not utilize a deadly weapon in resisting arrest, and, thus, the proper range of punishment would be that for a Class B misdemeanor offense.

From our review of the record, we find the sentences imposed by the trial court are illegal and, therefore, the judgments of conviction must be vacated and this case remanded to the trial court. The record establishes that the defendant was released on bail after the commission of the offense for aggravated assault committed in June 1998. In September 1998, the defendant committed the offense of felony vandalism to the home of Mrs. Linda Slaughter. Tenn. R. Crim. P. 32(c)(3) provides:

> (3) Mandatory Consecutive Sentences. - Where a defendant is convicted of multiple offenses from one trial or where the defendant has additional sentences not yet fully served as the result of the convictions in the same or other court and the law requires consecutive sentences, the sentence shall be consecutive whether the judgment explicitly so orders or not. This rule shall apply:

(A)     To a sentence for a felony committed while on parole for a felony;
(B)     To a sentence for escape or for a felony committed on escape;
(C)     To a sentence for a felony where the defendant was released on bail and the defendant is convicted of both offenses; and
(D)     Any other ground provided by law.

*See also* Tenn. Code Ann. § 40-20-111(b).

Therefore, these judgments must be vacated and the case remanded for a new sentencing hearing. Since this case involves open-ended negotiations for pleas of guilty and the convictions for these offenses require mandatory consecutive sentences, the trial court may wish to consider the validity of the defendant's guilty pleas. In the event the defendant should enter new pleas of guilty, we elect to address the application of enhancement factors found by the trial court.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a *de novo* review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and/or sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing; (d) the arguments of counsel as to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any statutory mitigating or enhancement factors; (g) any statements made by the defendant in his own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102,-103, -210; *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." Tenn. Code Ann. § 40-35-102(5). Thus, a defendant sentenced to eight (8) years or less, who is not an offender for whom incarceration is a priority, is presumed eligible for alternative sentencing, unless sufficient evidence rebuts the presumption. However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. *See State v. Taylor,* 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

In addition, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve

the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(2) and (4). The trial court should also consider the potential for rehabilitation of the defendant in determining the sentence alternative. Tenn. Code Ann. § 40-35-103(5).

We must now determine from the record the correctness of the trial court's imposition of sentences of five (5) years and four (4) years.

## LENGTH OF SENTENCE

In this appeal, the defendant asserts that the trial court erred in finding six (6) enhancement factors and the absence of any mitigating factors. The defendant contends that he should have received the minimum sentences of three (3) years for aggravated assault and two (2) years for vandalism. The State responds that the defendant has not overcome the presumption of correctness of the trial court's judgment, although some enhancement factors were not applicable to the sentence for aggravated assault.

The trial court specifically stated that it must consider the proof developed at the guilty plea entry and the evidence adduced at the sentencing hearing. The trial court stated that it was considering all information as well as the sentencing principles and purposes of sentencing. In finding that sentences of five (5) years and four (4) years were appropriate for the defendant, the trial court applied six (6) enhancement factors and no mitigating factors. Pursuant to § 40-35-114, the trial court found that: (1) the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (6) the personal injuries inflicted upon or the amount of damage to property was particularly great; (8) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; (9) the defendant possessed a deadly weapon during the commission of the offense; (10) the defendant had no hesitation about committing a crime when the risk to human life was high; and (13) the offense was committed while the defendant was released on bail from a prior felony conviction and is ultimately convicted of such prior felony.

The defendant asserts that his juvenile finding of delinquency for carrying a weapon is a Class C misdemeanor and, therefore, should be given little weight for enhancement. We agree. In 1995, the legislature amended Tennessee Code Annotated § 40-35-114 by adding enhancement factor (20), which allows for enhancement of a sentence if "the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." Tenn. Code Ann. § 40-35-114(20) (1997). This enhancement factor took effect on July 1, 1995, and applies to sentencing of any defendant committing an offense on or after that date; *State v. Brent Brown*, No. 02C01-9710-CC-00419, 1998 WL 742350 (Tenn. Crim. App. Oct. 26, 1998); *See State v. Carla Marie Parrish*, No. 01C01-9801-CR-00017, 1999 WL 173963 (Tenn. Crim. App. Mar. 30, 1999). Thus, it would be an error for the trial court to consider the defendant's finding of delinquency for carrying a weapon, a Class C misdemeanor. However, a defendant's drug use as an adult is evidence of a history of criminal behavior, which can be properly applied as enhancement. *State v. Alexander*, 957 S.W.2d 1, 7 (Tenn. Crim. App. 1997). The pre-sentence report reflects that the defendant admitted to using drugs, such as marijuana, Valium, LSD, Zanax and other pills.

However, the record is not clear as to whether the defendant was an adult at the time of such usage. Therefore, we cannot agree with the trial court that enhancement factor (1) applied to the defendant.

The defendant argues that the trial court was incorrect in applying enhancement factor (6), that the personal injuries inflicted or the amount of damages to property were particularly great, in that this factor is inherent in both of the offenses of aggravated assault and vandalism. In support of his position, the defendant cites *State v. Jones,* 883 S.W.2d 597 (Tenn. 1994) and *State v. Grissom,* 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997). The State argues that this factor is applicable to these offenses.

As to the aggravated assault offense, the indictment alleges that the defendant did intentionally or knowingly cause bodily injury to Brian Potts by the use or display of a deadly weapon.

Tennessee Code Annotated § 39-13-102 defines aggravated assault as:

(a) A person commits aggravated assault who:
    (1) intentionally or knowingly commits an assault as defined in § 39-13-101 and:
        (A) Causes serious bodily injury to another; or
        (B) Uses or displays a deadly weapon.

Bodily injury includes "a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2). In *State v. Jones,* our Supreme Court held that proof of **serious bodily injury** will always constitute proof of particularly great injury. *Jones*, 883 S.W.2d at 602. Thus, factor (6), causing serious bodily injury, is an element of the offense of aggravated assault and cannot be used to enhance the defendant's sentence. Since the State did not allege the element of serious bodily injury but the use of a deadly weapon for the offense of aggravated assault, we find that the facts in this case are distinguishable from *State v. Jones.* The victim, Brian Potts, sustained a skull fracture, black eyes, a swollen cheek, scratches and cuts to his shoulder, and a broken ring finger on his left hand. As a result of the fracture, the victim was hospitalized for five (5) days, where bone fragments were removed from his brain. The victim's medical bills exceeded twenty thousand ($20,000) dollars. We find that enhancement factor (6) is applicable to the facts in this case.

As to the damages sustained by Mrs. Slaughter to her home in the amount of three thousand one hundred and thirty one dollars ($3,131), we find that enhancement factor (6) is not applicable. A person who knowingly causes damage to or the destruction of any real or personal property of another, knowing that he does not have the effective consent of the owner, is guilty of vandalism. Tenn. Code Ann. § 39-14-408. Acts of vandalism are punishable as theft under Tenn. Code Ann. § 39-14-105. Thus, the amount of damage sustained by Mrs. Slaughter is punishable as a Class D felony, with a range of two (2) to four (4) years. To enhance the sentence for vandalism based upon damages caused by the defendant would constitute double enhancement in violation of the sentencing statutes. *Grissom,* 956 S.W.2d at 518.

The defendant complains that the trial court improperly applied enhancement factor (8), that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. The defendant maintains that, as a juvenile, he was placed on probation, but the State failed to prove that any violations of probation occurred. The defendant argues that a charge of "in-state runaway" was an informal adjustment by a Youth Service officer. Thus, this informal adjustment was not adjudicated, nor was the defendant sentenced on the charge of "in-state runaway." The State disagrees.

A defendant's juvenile record may be considered by a trial court in determining if enhancement factor (8) may be utilized by the trial court in increasing a sentence from the minimum range. *See State v. Griffin,* 914 S.W.2d 564, 568 (Tenn. Crim. App. 1995); *State v. Mika,* No. 02C01-9508-CR-00244, 1997 WL 76812, at *3 (Tenn. Crim. App. Feb. 25, 1997). From our review of the record, the defendant was charged in 1993 with being an "in-state runaway" and ordered to report to a Youth Services officer for an informal adjustment. In May 1993, the defendant missed school and failed to report to the Youth Services officer, whereupon the charge of "in-state runaway" was reinstated in an order to Juvenile Court for a formal hearing. In November 1995, the defendant was placed on intensive probation with the Department of Youth Services. In December 1995, the defendant was placed with the Department of Human Services for intensive psychological treatment, because he made statements that he was out of control and might hurt someone. Upon the defendant's release from the Department of Human Services, he was placed back on intensive juvenile probation. In the health comments of the pre-sentence report in 1997, we note that the defendant was sent to Pine Point Treatment Center in Jackson, Tennessee, for using marijuana during his juvenile probation. Other than this one episode, we find no violations of conditions of release from prior sentences imposed on the defendant. We are of the opinion that a formal charge and an informal adjustment of "in-state runaway" are not sentences within the meaning of enhancement factor (8). Also, we believe that the removal of the defendant for psychological treatment during intensive probation does not fall within the determination of an unwillingness to comply with the conditions of release. We find that the trial court was in error in applying this enhancement factor.

The defendant asserts that the trial court erred in applying enhancement factor (9), that the defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense. The State concedes that the defendant did not possess a deadly weapon at the commission of the vandalism and that the application of this enhancement factor was improperly considered by the trial court. Also, the State contends the application of the use of a deadly weapon, enhancement factor (9), is questionable as to the offence of aggravated assault. We do not find this application questionable.

The indictment charged the defendant with "bodily injury to Brian Potts by the use or display of a deadly weapon, to wit: a pool ball in a sock." A deadly weapon means "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tenn. Code Ann. § 39-11-106(a)(5)(B). This Court agrees that this enhancement factor (9) is not applicable, because the use of the pool ball, used as a deadly weapon, was an element of the offense of aggravated assault. *State v. Baker,* 956 S.W.2d 8, 17 (Tenn. Crim. App.), *perm. app. denied,* (Tenn.

1997); *State v. Sims,* 909 S.W.2d 46, 50 (Tenn. Crim. App.), *perm. app. denied*, (Tenn. 1995). The trial court erred in applying enhancement factor (9).

As to enhancement factor (10), the defendant asserts that the trial court erred in applying this factor to the offenses of aggravated assault and vandalism. The State concedes that enhancement factor (10), that the defendant had no hesitation about committing a crime when the risk to human life was high, is not applicable to the offense of aggravated assault but was properly applied to the offense of vandalism.

We agree with the State that the high risk to human life is not inherent in all vandalism offenses. The actions of the defendant in this case certainly had the potential for a high risk of life or serious bodily injury on the part of the victim, Mrs. Slaughter. The application of enhancement factor (10), in this case, is a close question. However, we believe that under the proof in this record, the trial court properly applied enhancement factor (10). The pre-sentence report sets forth the defendant's encounter with Mrs. Linda Slaughter. The defendant broke in the back door, ran through the house while Mrs. Slaughter was sitting on the couch, and then ran to the front door. The defendant turned around and ran out the back door. Mrs. Slaughter called 911, obtained a pistol, and while the defendant was breaking in the front door, she shot the defendant in the thigh. Notwithstanding his gunshot wound, the defendant was so out of control, that the arresting deputies had to shackle him. Apparently, the defendant was under the influence of LSD. If Mrs. Slaughter had not shot the defendant before he gained entrance, she would have been confronted by a drug crazed individual who was very capable of inflicting physical harm. We find no error in the trial court's application of enhancement factor (10) in this case of vandalism.

As to the aggravated assault offense, we find that the trial court improperly applied enhancement factor (10), because there was no proof of a risk to the life of a person other than to the victim. The risk involved here was an essential element of the offense of aggravated assault. *See State v. Nix,* 922 S.W.2d 894, 903 (Tenn. Crim. App.), *perm. app. denied,* (Tenn. 1996).

The defendant asserts that the trial court improperly applied enhancement factor (13) to the offense of aggravated assault but concedes it was properly applied to the vandalism offense. This factor states that the felony was committed while the defendant was released on bail and was ultimately convicted of such prior felony. The State argues that enhancement factor (13) was properly applied to the offense of vandalism, but there is nothing in the record to show that this factor was applied to the offense of aggravated assault.

We agree with the State that the record is not clear as to whether the trial court applied enhancement factor (13) to the offense of aggravated assault. However, the trial court did find that the defendant was on bail when he committed the vandalism offense. We find that the trial court properly assigned enhancement factor (13) to the defendant, since he was ultimately convicted of aggravated assault for the offense of vandalism.

The defendant contends that the trial court erred in failing to find any mitigating factors in considering an appropriate sentence for both offenses. The State argues that the record supports the trial court's findings.

The defendant would argue that because of his youth, he lacked substantial judgment in committing these offenses. Tenn. Code Ann. § 40-35-113(6). This factor is supported by the fact that the defendant was institutionalized for his mental behavior, and he was only 18 years old at the time of the commission of these offenses.

In determining the applicability of this mitigating factor (6), trial courts should consider the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct. *State v. Carter,* 908 S.W.2d 410, 413 (Tenn. Crim. App.), *perm. app. denied,* (Tenn. 1995)(citing *State v. Adams,* 864 S.W.2d 31, 33 (Tenn. Crim. App. 1993)). At the time of the offenses, the defendant was 18 years old, had obtained a GED, and had an excellent work record. However, the defendant used drugs and was obviously on drugs at the time of the commission of the vandalism offense. As a juvenile, the defendant was treated for psychological problems dealing with violent tendencies. We believe that mitigating factor (6) was applicable to the offense of vandalism and that the trial court was in error for failure to apply this factor to the offense of vandalism. However, we do not find that the trial court erred in failing to apply factor (6) to the aggravated assault offense. Based upon the facts of the aggravated assault, there is nothing to indicate that the defendant's age, maturity, experience, mental capacity or development caused an inability to appreciate the nature of his assault on Brian Potts.

The defendant contends that the trial court failed to consider other mitigating factors, such as his remorse, outstanding employment record, and exemplary behavior while in custody for eight (8) months, pursuant to § 40-35-113(13). The State points out that the trial court did not have the opportunity to evaluate the defendant's sincerity as to remorse, since the defendant did not testify. We agree. The only evidence of remorsefulness in this record is the defendant's pre-sentence report statement and his grandmother's testimony. We cannot find that the trial court was in error for failing to apply any remorse as a mitigating factor. However, we believe that the defendant has established that he has a good work record, as reflected in the pre-sentence report by a letter from a Nissan dealer who is willing to re-hire the defendant. Also, we believe that the defendant's period of incarceration should be considered in assessing an appropriate sentence. Here, the record reflects that during his eight (8) month confinement, the defendant has been a model inmate. We find this to be a mitigating factor pursuant to § 40-35-113(13).

Since we have determined that the trial court misapplied certain enhancement factors, we conduct our review without a presumption of correctness pursuant to § 40-35-401(d). In determining an appropriate sentence, the trial court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). In our *de novo* review of the record, we find that the record supports the application of enhancement factors (6) for the offense of aggravated assault, (10) for the offense of vandalism, and (13) for the offense

of vandalism. We find that the record does not support the applications of enhancement factor (1) for the offenses of aggravated assault and vandalism, (6) for the offense of vandalism, (8) for the offenses of aggravated assault and vandalism, (9) for the offenses of aggravated assault and vandalism, and (10) for the offense of aggravated assault. We hold that the record supports the application of two mitigating factors, the defendant's work record and his model period of incarceration. In conclusion, we find enhancement factor (6) for the offense of aggravated assault and two enhancement factors (10) and (13) for the offense of vandalism, and two mitigating factors. Moreover, we cannot say that the trial court erred in denying probation for a five-year sentence.

The trial court's judgments are vacated and the case is remanded for a new sentencing hearing.

_____
L. TERRY LAFFERTY, SENIOR JUDGE