# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 7, 2011

## STATE OF TENNESSEE v. MYRON MCNEAL

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-03099     James C. Beasley, Jr., Judge**

---

### No. W2010-01130-CCA-R3-CD  - Filed February 16, 2012

---

A Shelby County Criminal Court jury found the appellant, Myron McNeal, guilty of attempted second degree murder and employing a firearm during a felony.  For the convictions, the trial court imposed a total effective sentence of thirty-eight years.  On appeal, the appellant challenges the sufficiency of the evidence supporting his convictions and the sentences imposed by the trial court.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Stephen Bush and Phyllis Aluko (on appeal) and Russell White (at trial), Memphis, Tennessee, for the appellant, Myron McNeal.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pamela Fleming, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The appellant's convictions arose from the shooting of the victim, LeRico Bland, in East Memphis.  The proof at trial revealed that on December 9, 2008, two days before the shooting, the appellant, a man named "Bay Bay" and some other men were in the victim's apartment in the Wood Dale Condominiums at a time when the victim was not there and

without the victim's permission. When the victim returned home, he asked the men to leave, and they complied.

Later that day, the victim saw that a window in his apartment was broken. The victim walked outside to see if his father, Lee Wright, who also lived in the apartment complex, was home. Bay Bay approached the victim and provoked a fight. Bay Bay's brother, Mike; the appellant; and two other men joined the fight against the victim. During the fight, the victim heard a gunshot and saw the appellant point a gun at him. Another man hit the right side of the victim's face and knocked him down. One of the victim's friends helped him up and guided him to Wright's apartment.

The victim testified that he did not see the appellant for two days, and he assumed the dispute was over and "water under the bridge." On December 11, 2009, as the victim was leaving Wright's apartment, he saw the appellant, Bay Bay, and Mike in a field about twenty or thirty feet away. The men told the victim that he needed a gun because they planned to kill him. The victim, who was unarmed, took off his shirt to prepare for a fight.

The victim said that he knocked on the door of Wright's apartment to let him know the men were outside. The victim's pregnant stepsister, Victoria Powell, came out of the apartment and began arguing with the men who were harassing the victim. When the men approached Powell in a threatening manner, the victim and Powell walked toward the apartment. Powell looked back and told the victim that one of the men had a gun. The victim saw the gun and pushed Powell out of the way, fearing the appellant would shoot her. The victim heard a gunshot and realized that he had been shot. The bullet went into one side of the victim's stomach, out the other side, and lodged in his right forearm. The victim was taken to the hospital where he was placed in a medically-induced coma.

Shortly after the shooting, Officer Anthony Billingsley heard that the appellant was seen running toward the Fox Hollow Apartments, which were located across from the Wood Dale Condominiums. Because he was nearby, Officer Billingsley joined in the search and found the appellant hiding in the corner of a building. Officer Billingsley took the appellant into custody and handcuffed him. Although officers searched the appellant and the surrounding area, they were unable to locate a gun.

Detective Robert Wilkie spoke with the appellant on December 13, 2008. After being advised of his Miranda rights and signing a waiver of those rights, the appellant denied any involvement in the shooting. He explained that he went to the Wood Dale Condominiums that day to see a friend. Upon his arrival, he saw police cars and tried to avoid the police because he was in possession of marijuana. The appellant said that he did not know about the shooting until after he was arrested.

-2-

When the victim woke from his coma on December 26, he informed Detective Wilkie that the appellant had shot him. While in the hospital, the victim underwent several procedures. At the time of trial, the victim had a "JP drain" because of damage to his stomach and the loss of half of his liver. The victim left the hospital on January 6, 2009, but had to return on January 8. He was discharged for the last time on January 16.

While the victim was in the hospital, he had two female visitors whom he had never seen before. One of the women was wearing a visitor's pass that revealed her name was Ariel. She asked if the victim could remember who shot him and if she could bring him a gift. The victim told Detective Wilkie about the visit. Detective Wilkie checked the visitor's registry and found the name and picture of the victim's visitor, Ariel Boyd. The appellant later told Officer Wilkie that Boyd was his girlfriend.

The State rested its case, and the defense did not put on proof. The jury found the appellant guilty of attempted second degree murder and employing a firearm during a felony. The trial court imposed a total effective sentence of thirty-eight years. On appeal, the appellant challenges the sufficiency of the evidence and the sentences imposed.

## II. Analysis

### A. Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The appellant was convicted of attempted second degree murder and employing a firearm during the commission of a dangerous felony. Second degree murder is the knowing killing of another. Tenn. Code Ann. § 39-13-210(a)(1). A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is

reasonably certain to cause the result. Tenn. Code Ann. § 39-11-106(a)(20); see also State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000). Criminal attempt requires that one act "with the kind of culpability otherwise required for the offense . . . [and] with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part." Tenn. Code Ann. § 39-12-101(a)(2). The appellant was also convicted of possessing a firearm during the commission or attempt to commit a dangerous felony, such as attempted second degree murder. See Tenn. Code Ann. § 39-17-1324(b) and (i)(1)(B).

The appellant argues that there was insufficient proof that he was the shooter, noting that one of the witnesses believed the shooter to be "light skinned" but that the appellant "is dark skinned." The appellant also contends that the evidence does not prove that the shooting was committed "knowingly." In support of this claim, the appellant asserts that he and the victim were friends and that the disagreement was with the appellant's friends, not the appellant. Additionally, the appellant argues that the fact that only one shot was fired "is more indicative of the shooter trying to warn the victim or break up the fight between him and Bay Bay."

The appellant's arguments are unavailing. The victim and Powell identified the appellant as the shooter, noting that the appellant was pointing a gun at the victim immediately prior to the shooting. The victim specifically saw the appellant aiming the gun to shoot. The appellant complains that a witness identified a "light skinned boy" as the shooter and notes that he has a dark complexion; however, the jury heard the testimony and saw the appellant and, as was its prerogative, accredited the victim and Powell's identification of the appellant as the shooter.

Moreover, the proof adduced at trial revealed that two days prior to the shooting, the victim had two altercations with the appellant and the appellant's friends. First, the appellant was in the victim's apartment without permission, and the victim asked him to leave. Second, a few hours after leaving the victim's apartment, the appellant was among a group of men who gathered to beat the victim. During the fight, the appellant fired a shot then pointed his gun at the victim. On the day of the shooting, three of the men who beat the victim, including the appellant, saw the victim and told him that he needed to have a gun because they were going to kill him. The victim saw the appellant aim his gun immediately prior to the shot being fired. We conclude that a reasonable jury could find from this proof that the appellant knowingly attempted to kill the victim and that he used a gun to commit that dangerous felony.

B. Sentencing

-4-

The appellant argues that the sentences imposed by the trial court were excessive because the court erred in applying certain enhancement factors and in failing to apply certain mitigating factors. Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should also consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; State v. Carter, 254 S.W.3d 335, 343-44 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[A]ppellate courts are

-5-

therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence . . . [and are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 345-46.

In the instant case, the trial court found that the appellant was a Range III persistent offender. See Tenn. Code Ann. § 40-35-107(a)(1). The court applied enhancement factor(6), that the personal injuries inflicted upon the victim were particularly great; enhancement factor (10), that the appellant had no hesitation about committing a crime when the risk to human life was high; and enhancement factor (16), that the appellant had been adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. See Tenn. Code Ann. § 40-35-114(6), (10), and (16). The court further found that these enhancement factors were applicable to both of the appellant's convictions. Further, the trial court applied enhancement factor (9), that the appellant possessed or employed a firearm during the commission of the offense, to the attempted second degree murder conviction. See Tenn. Code Ann. § 40-35-114(9). The trial court found no mitigating factors. See See Tenn. Code Ann. § 40-35-113. Based upon the foregoing, the trial court sentenced the appellant to twenty-five years for his Class B felony conviction for attempted second degree murder and to thirteen years for his Class C felony conviction for using a firearm during a dangerous felony.[1] The trial court ordered the appellant to serve one hundred percent of the first ten years of his thirteen-year sentence in confinement.

Generally, an enhancement factor may be applied "[i]f appropriate for the offense and if not already an essential element of the offense." See Tenn. Code Ann. § 40-35-114. On appeal, the appellant argues that the trial court improperly applied enhancement factors (6), (9), and (10) because the factors are inherent in the offense of attempted second degree murder. Additionally, the appellant complains that the trial court failed to properly find that the appellant's remorse was a mitigating factor.

First, the trial court found that the personal injuries inflicted upon the victim were particularly great. Tenn. Code Ann. § 39-35-114(6). In making this determination, the trial court noted that the victim testified in "very graphic detail" about "post-surgery problems . . . [he] still suffers from . . . and some two years later [he] still has some type of drain tube and he obviously has a lot of personal problems because of the injuries inflicted." This court

---

[1] The jury, in a bifurcated proceeding, found the appellant guilty of having a prior conviction for a dangerous felony, making the statutory minimum sentence for the offense ten years at one hundred percent in the Tennessee Department of Correction. See Tenn. Code Ann. § 39-17-1324(h)(2), (i)(2)(A).

has previously stated that "personal injuries, great or small, are not an element of attempted murder." State v. Alexander, 957 S.W.2d 1, 7 (Tenn. Crim. App. 1997). We conclude that the trial court did not err in applying this enhancement factor.

Next, the trial court applied enhancement factor (9), that the appellant used a firearm during the commission of the offense, to the attempted second degree murder conviction. Normally, this enhancement factor may be applied because "[t]he use of a gun is neither an element of [attempted] second degree murder nor inherent in the offense." State v. Hampton, 24 S.W.3d 823, 832 (Tenn. Crim. App. 2000). However, this court has previously stated that enhancement factor (9) should not be used to enhance an "attempted murder conviction [when] the defendant was separately indicted and convicted of the offense of employing a firearm during the commission of the attempted murder." State v. Brian Hervery, No. W2010-00675-CCA-R3-CD, 2011 WL 1225725, at *9 (Tenn. Crim. App. at Jackson, Mar. 31, 2011), , perm. to appeal denied, (Tenn. 2011). Therefore, the trial court erred in applying this enhancement factor to the appellant's attempted second degree murder conviction because the appellant was separately convicted of employing a firearm during a felony. Regardless, the remaining enhancement factors support the sentence imposed by the trial court.

The trial court also found that the appellant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(10). The appellant is correct that factor (10) is inherent in every homicide or attempted homicide in relation to the named victim; however, "the trial court may consider this factor when the defendant endangers the lives of people other than the victim." State v. Kelly, 34 S.W.3d 471, 480 (Tenn. Crim. App. 2000). The trial court noted that Powell and her mother were nearby when the appellant fired the weapon and that Wright and the victim's stepbrother were in an apartment toward which the appellant was shooting. Therefore, we conclude that the trial court properly applied this enhancement factor.

Finally, the appellant contends that the trial court failed to properly consider mitigating factors, specifically contending that his remorse should have been considered in mitigation. At the sentencing hearing, the appellant apologized to the court and the victim, but the trial court found that no mitigating factors were applicable. This court has explained that "remorse is best left to the determination of the trial court. A defendant's bare assertion of remorse or hollow apologies at the sentencing hearing do not automatically grant entitlement to mitigation in the sentencing process." State v. Carl M. Hayes, No. 01C01-9509-CC-00293, 1996 WL 611167, at *4 (Tenn. Crim. App. at Nashville, Oct. 24, 1996).

As a Range III persistent offender, the appellant was subject to a sentence of between

twenty and thirty years for the Class B felony conviction for attempted second degree murder and between ten and fifteen years for the Class C felony conviction for possession of a firearm during a dangerous felony. <u>See</u> Tenn. Code Ann. § 40-35-112(c)(2)-(3). The trial court sentenced the appellant to twenty-five years for the attempted second degree murder conviction and to thirteen years for the possession of a firearm during a dangerous felony conviction. We discern no error in the sentences imposed by the trial court.

## III. Conclusion

In sum, we conclude that there was sufficient evidence adduced at trial to sustain the appellant's convictions and that the trial court did not err in imposing a total effective sentence of thirty-eight years. The judgments of the trial court are affirmed.

_____
NORMA McGEE OGLE, JUDGE