IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 13, 2001

## STATE OF TENNESSEE v. JACQUELINE HURT

**Appeal from the Criminal Court for Shelby County**
**Nos. 99-11968, 99-11969, 99-11970, and 99-11971**
**W. Otis Higgs, Jr., Criminal Court Judge**

_____

**No. W2000-02193-CCA-R3-CD  - Filed August 16, 2001**

_____

Pursuant to a plea agreement, the appellant, Jacqueline Hurt, entered open guilty pleas to two counts of attempted first degree murder, one count of especially aggravated robbery, and one count of especially aggravated kidnaping, all Class A felonies. She received an effective sentence of seventy-five years. The appellant contends that the trial court imposed an excessive sentence because it erred in applying one enhancement factor and because it imposed consecutive sentences. We affirm the judgment of the trial court.

**Tenn. R. App. R. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

CORNELIA A. CLARK, SP. J., delivered the opinion of the court, in which JOE G. RILEY and NORMA MCGEE OGLE, JJ., joined.

Robert Little, Timothy Williams, Kendall Reeves, Mike Gatlin, attorneys for appellant, Jacqueline Hurt.

Paul G. Summers, State Attorney General, Kim R. Helper, Assistant Attorney General, William L. Gibbons, District Attorney General, Karen Cook, Assistant District Attorney General, attorneys for the appellee, State of Tennessee.

### OPINION

The salient facts in this case were summarized by the trial judge in his Sentencing Order and adopted verbatim by the appellant in her brief. We also adopt them:

On Thursday, April 15, 1999, at approximately four o'clock in the morning, the Defendant went to the apartment of the victim, Carnomas Manning. The Defendant knocked on Ms. Manning's door, and asked for some money the Defendant maintains was owed her by the victim. Ms. Manning responded that she did not have the money. The defendant then asked if she could come in for a drink

of water.  Ms. Manning allowed the Defendant into her apartment at this request. According to the victim's own testimony, the victim, who was seven months pregnant, sat down on the couch in the front room of the apartment and dozed off. She was awakened when she was hit by the Defendant in the side of the face by a quart size bottle of beer.  The defendant immediately began to stab the victim with the broken beer bottle.  According to the victim, the Defendant put a pillow over her head to muffle her screams, then opened the front door to look outside and see if anyone had heard the fighting.  The Defendant shut the door, and at this point went into the kitchen and retrieved a butcher's knife.  The Defendant then covered the victim with a bed linen, straddled the victim's stomach, and began stabbing her with the butcher's knife.  When the victim stopped struggling, the Defendant tied the victim's hands together, and also bound her feet together.  She then dragged the victim into her own bedroom and left her there.  The Defendant testified that the above described altercation lasted about ten minutes.  At this point, the Defendant left the victim and took a shower in the victim's bathroom while the victim lay helpless and bleeding on her bed.  The Defendant also washed her clothes at the victim's apartment.  When she got out of the shower, the Defendant noticed that the victim was struggling to free herself from her binds.  The Defendant tightened the ties on both the hands and feet of the victim, and then "hog-tied" the victim.  The Defendant then placed a towel around the victim's neck, and two plastic bags over the victim's head, and secured them in place by wrapping a phone cord around the victim's neck.  The victim testified that the entire time this was happening, the Defendant was talking to the victim.

The Defendant then put her cigarette out on the victim's face, and left the apartment.  She returned only a few minutes later, took some money from the victim's purse, then left the apartment again.  The victim worked to free herself when the Defendant left.  However, the victim's terror had not yet ended.  The Defendant returned to the apartment yet again.  Upon returning to the apartment, the Defendant saw that the victim was again attempting to free herself. The Defendant took a meat cleaver and chopped into the victim's forearm, retied her, and then covered the victim with covers and went into the living room.  During the entire ordeal, the victim's small children, ages two and three years old, were in the apartment.  The victim testified that while laying on the bed, she could hear the Defendant in her living room picking up glass, and that she could hear her two children crying.  The Defendant returned to the bedroom, and began talking to the victim.  The Defendant informed the victim that she didn't like her and that she had been planning this for a while. The Defendant laughed at the victim and told her she wouldn't be "such hot stuff" anymore.  The victim continued to try to talk to the Defendant.  She asked the Defendant for some water.  The Defendant returned with a glass of water, poured it all over the victim's body, and began whipping her with a belt.  When the victim stopped moving, the Defendant retired to the living room to watch television with the children.  The victim described in detail how she was struggling to breath [sic], to

loosen herself, and "actually just to think". After a couple of hours, the Defendant returned to the bedroom, and fell asleep beside the victim. The victim continued to struggle to free herself, and after about two more hours, the victim was able to remove the tie that bound her hands and feet together. At approximately 10:50 am [sic], with her arms still tied and the bags still wrapped around her head, the victim managed to get to the front door, escape the apartment, and fled to the apartment manager's office. The property manager cut the cords from the victim's hands and the plastic from her face. After telling of her ordeal, several maintenance men were called for assistance. They proceeded to the victim's apartment. Once they entered, they found the victim's two young children in the living room, covered in blood, but apparently unharmed. At this point the Defendant emerged from the bedroom. The maintenance men held her in the apartment until two uniformed officers arrived and took her into custody. When arrested, the Defendant had $21.00 in cash, $20 of which she took from the victim's purse, the victim's identification, and the identification of the victim's deceased mother. On Friday, April 16, 1999, the Defendant gave a typed written signed statement of admission to this incident.

On May 8, 2000, the defendant entered pleas of guilty to two counts of attempted first degree murder, one count of especially aggravated robbery, and one count of especially aggravated kidnaping, all Class A felonies. She advised the court that she was entering the pleas to attempted murder in her best interest pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

The trial court conducted a sentencing hearing on August 14 and 31, 2000. The state presented the testimony of five witnesses, including the victim. Information from a neonatologist and a pediatrician indicated that the victim's seven-month fetus was damaged during the attack on the victim, resulting in the birth of a son with cerebral palsy, significant brain damage, and orthopedic problems.

The defendant testified in her own behalf and denied statements she made in the typed confession. She stated that she had been drinking continuously for several hours prior to the incident. She stated that she did not remember exactly what happened. She denied that she intended to hurt the victim or her children; she just wanted to get her money back. She acknowledged that she had given her prior statement voluntarily. She later acknowledged understanding that she had hurt the victim. She admitted that she had hit the victim with a bottle. She also acknowledged hitting her with her fist.

The trial court sentenced the defendant to serve twenty-five years on each of the four counts. The two attempted murder charges were run consecutive to each other. The remaining counts were run concurrent to each other, but consecutive to the attempted murder counts, for an effective sentence of seventy-five years.

When an accused challenges the length, range or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401 (d). This presumption is, however, "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statements that the defendant made on his or her own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§40-35-102, -103, and -210; See *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact adequately supported by the record, then we may not modify this sentence even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The sentence range for a Range I offender convicted of a Class A felony is fifteen to twenty-five years. Tenn. Code Ann. §40-35-112(a)(1). The presumptive sentence for a Class A felony is the mid-point of the range if there are no enhancement or mitigating factors. Tenn. Code Ann. §40-35-210(c). If the court finds that there are enhancement factors but no mitigating factors, the trial court may set the sentence at or above the mid-point range. Tenn. Code Ann. §40-35-210(d).

The appellant acknowledges that she presented no mitigating evidence, and does not challenge the failure of the trial court to find mitigating factors.

The trial court found the existence of seven enhancement factors under Tenn. Code Ann. §40-35-114: (1) previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range (applied to all counts); (3) the offense involved more than one victim (applied to all counts); (4) the victim was particularly vulnerable because of age or physical or mental disability (applied to all counts); (5) the defendant treated or allowed the victim to be treated with exceptional cruelty during the commission of the offense (applied to all counts); (6) personal injuries inflicted or amount of damaged property sustained by the victim was particularly great (applied to the counts of attempted first degree murder); (8) previous history of unwillingness to comply with the conditions of a sentence involving release in the community (applied to all counts); and (9) defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense (applied to the counts of attempted first degree murder).

The appellant does not contest the application of six of the enhancement factors. We agree that those factors apply. The appellant questions only the application of enhancement factor (3), the existence of multiple victims. The trial court relied on two arguments in applying this enhancement factor: the fact that the victim was pregnant at the time of the attack, causing her unborn child to be injured; and the fact that her two other children were witnesses to the crime.

We agree with the defendant that the mere witnessing of an attack on the victim by another is not covered by this interpretation of the word "victim". *See State v. Alexander*, 957 S.W.2d 1 (Tenn. Crim. App. 1997). The presence of the victim's two small children is not sufficient to make this enhancement factor applicable.

This court has also held that the multiple victim enhancement factor cannot be applied when the defendant is convicted of separate offenses against each victim. *See State v. Williamson*, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995). Since appellant was convicted of separate counts of attempted first degree murder of the victim and her unborn child, this enhancement factor does not apply to those counts. Thus, the trial court erred in using this factor to increase the appellant's sentences on those counts. The factor also should not have been used to enhance the convictions for especially aggravated kidnaping and especially aggravated robbery, since those involved only one victim - Carnomas Manning.

Because the trial court misapplied one enhancement factor, our review is *de novo* without a presumption of correctness.

The appellant pled guilty to four Class A felonies. The proper statutory starting point for defendant's sentence on each count is twenty years. Even without the use of factor (3), the trial judge properly applied four enhancement factors to all counts, and two additional enhancement factors to the attempted murder counts. We conclude that the existence of these enhancement factors is sufficient to justify imposing the maximum sentence of twenty-five years on each count. This issue has no merit.

The appellant also challenges the imposition of consecutive sentences. A trial court may order sentences for multiple convictions to run consecutively if it finds by a preponderance of the evidence that, *inter alia*,

. . .

(2) the defendant is an offender whose record of criminal activity is extensive, [or]

. . .

(4) the defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime when risk to human life is high[.]

-5-

Tenn. Code Ann. §40-35-115(b). In order to impose consecutive sentences on the basis that the defendant is a dangerous offender, the trial court must make two additional findings: that an extended sentence is necessary to protect the public against further criminal conduct by the defendant, and that the consecutive sentences reasonably relate to the severity of the offenses committed. *See State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). Moreover, no matter what basis the trial court relies upon in imposing consecutive sentences, the actual length of the sentence must be "justly deserved in relation to the seriousness of the offenses" and "no greater than that deserved for the offenses committed". *See* Tenn. Code Ann. §§40-35-102(1), - 103(2); *see also State v. Lane*, 3 S.W.3d 456, 460 (Tenn. 1999).

The appellant had eight prior convictions, including several for theft. Thus, the court was justified in finding an extensive prior criminal record. Extensive criminal activity alone will support consecutive sentencing. *State v. Palmer,* 10 S.W.3d 648, 649 (Tenn. Crim. App. 1999); *State v. Chrisman*, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994).

The court also found that the appellant's sustained vicious activity over an extended period indicated no regard for human life, making her clearly a dangerous offender. The trial judge noted:

> This is one of the most violent, vicious crimes this court has ever seen . . . I might add, this is the most severe case that I've handled in thirty years as a judge.

The court found that the appellant was indifferent to the "high probability of calamitous consequences" to the victim and her children. The appellant repeatedly stabbed the pregnant victim over a several-hour period, sat on her chest to suffocate her, taunted her, and refused to provide help, all while the victim's small children were present. Persons who came to the scene described an apartment full of blood, and pieces of flesh strewn on the carpet. An unborn child was damaged for life. The record fully supports the imposition of this factor to support consecutive sentences.

In summary, we find that the sentence lengths were appropriate, the extended length of the consecutive sentences reasonably relate to the severity of the crimes, and a lengthy sentence is necessary to protect the public against further criminal conduct by the appellant. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). Accordingly, the judgment of the trial court is affirmed in all respects.

_____
CORNELIA A. CLARK, SPECIAL JUDGE