IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 10, 2002

## STATE OF TENNESSEE v. TIMOTHY TYRONE SANDERS

**Direct Appeal from the Circuit Court for Bedford County**
**No. 14492     Charles Lee, Judge**

———————————————

**No. M2001-02128-CCA-R3-CD - Filed July 5, 2002**

———————————————

The appellant, Timothy Tyrone Sanders, was convicted in the Bedford County Circuit Court of one count of possession of .5 grams or more of cocaine with intent to sell. On direct appeal, this court reversed the appellant's conviction because the trial court failed to properly charge the jury on the lesser-included offense of simple possession, and we remanded the case for retrial. State v. Timothy Tyrone Sanders, No. M2000-00603-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 38, at **13-14 (Nashville, January 18, 2001). Subsequently, the appellant was once again convicted of possession of cocaine with intent to sell. The trial court sentenced the appellant as a Range II offender to seventeen years and six months incarceration in the Tennessee Department of Correction. In the instant appeal, the appellant raises the following issues: (1) whether the evidence is sufficient to sustain his conviction, and (2) whether the trial court erred in determining the length of his sentence. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Merrilyn Feirman, Nashville, Tennessee (on appeal); and Andrew Jackson Dearing, III, and Mike Collins, Shelbyville, Tennessee (at trial), for the appellant, Timothy Tyrone Sanders.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I. Factual Background

On October 25, 1999, the appellant was convicted by a jury in the Bedford County Circuit Court of one count of possession of .5 grams or more of cocaine with intent to sell and was sentenced as a Range II offender to seventeen years and six months incarceration. The appellant

successfully appealed his conviction and the case was remanded for new trial. Sanders, No. M2000-00603-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 38, at**13-14. Upon retrial, the State first presented the testimony of Officer James Wilkerson with the Shelbyville Police Department. Officer Wilkerson testified that, due to numerous complaints of narcotics activity on Byrd Street, he and Detective Tony Andrew Collins were patrolling the Byrd Street area of Shelbyville on the night of October 30, 1998. Officer Wilkerson observed the appellant erratically driving a Pontiac Bonneville and began following him. Eventually, the appellant drove the vehicle into a driveway at 433 Byrd Street and stopped. Officer Wilkerson parked his unmarked vehicle on the road near the appellant's vehicle. The appellant immediately exited the vehicle and began walking toward the officers' vehicle. Officer Wilkerson and Detective Collins exited their vehicle, identified themselves as police, and approached the appellant's vehicle. Officer Wilkerson walked toward the appellant who was on the driver's side of the vehicle, and Detective Collins approached the passenger side of the vehicle. Officer Wilkerson testified that two other individuals remained inside the vehicle. Willie Dwayne Webster was in the front passenger seat, and Santita Makeva Sutton was in the back seat.

Officer Wilkerson recounted that the appellant, who had been driving the vehicle, met him at the rear of the vehicle on the driver's side. He described the appellant as having a strong odor of alcohol, and additionally recalled that the appellant had a "real bad tremor," was shaking, sweating, and appeared extremely nervous. Officer Wilkerson did a "pat-down" for weapons and instructed the appellant to sit on the ground.

Detective Collins testified that, while Officer Wilkerson was talking with the appellant, he was observing the passengers inside the vehicle. He became concerned when he noticed Webster doing a "pushing motion" or an "up and down motion" with his hands. Detective Collins pulled his weapon and instructed the passengers to keep their hands in plain sight. Once other officers arrived to assist, Detective Collins instructed Webster and Sutton to exit the vehicle. He performed a pat-down search of both passengers and the officers proceeded to conduct a search of the vehicle.

Officer Wilkerson stated that the vehicle had bucket seats in front, and, located between the driver's seat and the center console, he discovered a 12 gauge Winchester tactical pump shotgun with a pistol grip. The gun was fully loaded with "one in the chamber." Extra shotgun shells were discovered in the back seat of the vehicle.

During the search, Detective Collins found, in the driver's seat, a purple Crown Royal bag containing two small, clear plastic bags. Inside each plastic bag was a substance that appeared to be crack cocaine. The three occupants of the vehicle were arrested and taken to the Shelbyville police station where they were searched. The police found $2,120.25 in small denominations in Webster's pocket and $95 in cash in the appellant's possession.

Donna Flowers, a forensic chemist with the Tennessee Bureau of Investigation (TBI) crime laboratory, testified that the substance found in the Crown Royal bag was 3.5 grams of cocaine

base, which is more commonly known as crack cocaine.[1]  Officer Wilkerson testified that the approximate street value of 3.5 grams of crack cocaine is $350 if the drug is purchased in one large amount.  However, he advised that most users purchase crack cocaine in $20 rocks and "[t]he smaller the amount, the more you pay."  Officer Wilkerson asserted that, typically, users of crack cocaine possess only a small amount of the drug at a time, usually worth around $20-$50.  He also explained that crack cocaine is customarily smoked in a "crack pipe"; however, no crack pipe was discovered in the vehicle or in the possession of any of the occupants. Moreover, Officer Wilkerson related that, in his experience, drug dealers commonly use Crown Royal bags to conceal their drugs. Additionally, he maintained that packaging drugs in separate bags indicates that the substance is for distribution.  He recounted that 3.5 grams is a large amount for personal use, suggesting that the crack cocaine was for distribution.

Officer Wilkerson testified that he interviewed the appellant at the police station. During the interview, the appellant denied ownership of the drugs.  Officer Wilkerson acknowledged that he did not remember if the appellant denied ownership of the vehicle or the gun.  However, he noted that the appellant was driving the vehicle, and the gun was located within easy reach of the appellant; in fact, Officer Wilkerson noted that the appellant's right hand and leg could have rested on the gun while the appellant was driving.

Based upon the foregoing evidence, a jury convicted the appellant of possession of .5 grams or more of cocaine with intent to sell.  At the sentencing hearing, the trial court incorporated the evidence from the trial and from the first sentencing hearing,[2] and, concluding that there was no reason to alter the sentence imposed upon the appellant after the first trial, the trial court again sentenced the appellant as a Range II offender to seventeen years and six months incarceration. The appellant now appeals his conviction and his sentence.

## II.  Analysis
### A.  Sufficiency of the Evidence

In reviewing the sufficiency of the evidence underlying a conviction, this court does not reweigh or reevaluate the evidence.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because the jury resolves all questions regarding the credibility, weight, and application of the evidence, "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory."  State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).  In other words, the State is entitled to the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.  State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).  Accordingly, to be successful in his challenge to his conviction, the appellant must establish

---

[1]  The parties stipulated that Flowers is an expert in the field of forensic chemistry.

[2]  We note that the State and the appellant agreed to incorporate the evidence adduced at the first sentencing hearing into the sentencing hearing for the instant conviction. Furthermore, the State and the appellant agreed to simply update the presentence report rather than holding a completely new hearing.

that no reasonable trier of fact could have found the essential elements of the offense in question beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

In order to obtain the appellant's conviction, the State needed to prove that the appellant knowingly possessed .5 grams or more of cocaine with intent to sell. Tenn. Code Ann. § 39-17-417 (1997). The appellant specifically contends that "the State failed to prove that Mr. Sanders had actual or constructive possession of the crack cocaine."

> This court has explained:
> Proof that a possession is knowing will usually depend on inference and circumstantial evidence. Knowledge may be inferred from control over the vehicle in which the contraband is secreted. Possession of a controlled substance can be based on either actual or constructive possession. The state may establish constructive possession by demonstrating that the defendant has the power and intention to exercise dominion and control over the controlled substance either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession.

State v. Brown, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995) (citations omitted). Moreover, it is well-established that a person's mere presence in an area where drugs are discovered is not, standing alone, sufficient to establish that the person possessed the drugs. State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Additionally, "mere association with a person who does in fact control the drugs or the property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." Brown, 915 S.W.2d at 8. Furthermore, possession can be either individual or joint. See State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984).

In the instant case, the crack cocaine was found in the driver's seat of the vehicle driven by the appellant who had just gotten out of the vehicle. See State v. Steven D. Pittman, No. M1999-00320-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 304, at **8-9 (Nashville, April 7, 2000), perm. to appeal denied, (Tenn. 2000). While there was no proof that the appellant owned the vehicle, there was substantial proof that the appellant was driving the vehicle. This court has held "that a defendant's possession of contraband may be inferred from a defendant's ownership or control over a vehicle in which the contraband is secreted." State v. James A. Jackson, No. M1998-00035-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 373, at *36 (Nashville, May 5, 2000); see also State v. Elpidio Valdez, No. M1999-00791-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 256, at *16 (Nashville, April 4, 2001). We find that this evidence is sufficient to prove that the appellant had the "ability to reduce the [crack cocaine] to actual possession." Brown, 915 S.W.2d at 7. In sum, the appellant was driving the vehicle, the drugs were found in his seat, the pump-action shotgun was located directly by the driver's seat, and the vehicle "was in an area known for drug transactions." Id. at 8; see also State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). Additionally, we note that Officer Wilkerson described the appellant as "very nervous." See State v. Selina G. Harrelson, No. W1999-00521-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 583, at *20 (Jackson, July 28, 2000). These

facts constitute more than mere presence in an area where the drugs were found and more than mere association with the other passengers. Brown, 915 S.W.2d at 8.

Once the appellant's possession of the cocaine was established, the State was required to prove that he possessed the cocaine with the intent to sell. Tenn. Code Ann. § 39-17-419 (1997) provides that "[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Flowers, the TBI forensic chemist, testified that her examination of the substance verified that it was 3.5 grams of crack cocaine. Again, Officer Wilkerson asserted that 3.5 grams is a large amount of crack cocaine for an addict or mere user to possess for their own use and opined that 3.5 grams of crack cocaine is worth at least $350. In his experience, most users buy $20 rocks and only have $20 to $50 worth of crack cocaine at any one time. Officer Wilkerson testified that drug dealers commonly hide their stash in Crown Royal bags and package the drugs in separate plastic bags for the purpose of distribution. See State v. Larry Wayne Burney, No. M1999-00628-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 303, at **7-8 (Nashville, April 7, 2000). Furthermore, the appellant was found with $95 in small bills and his passenger, Webster, was found with over two thousand dollars in his possession. Additionally, we again note that the appellant possessed a loaded shotgun. See State v. Adarryl Devon Brooks, No. W1999-00632-CCA-R3-CO, 2001 Tenn. Crim. App. LEXIS 21, at **9-10 (Jackson, January 9, 2001). Moreover, no drug paraphernalia, such as a "crack pipe" for the ingestion of crack cocaine, was discovered in the vehicle or on any of the passengers.[3] Brown, 915 S.W.2d at 8. We conclude that this evidence is sufficient to sustain the appellant's conviction for possessing over .5 grams of cocaine with intent to sell.

## B. Sentencing

As his second issue, the appellant argues that the trial court erred in sentencing him to seventeen years and six months incarceration, complaining that he received "almost the maximum sentence." Generally, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (1997); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In any event, the burden is on the appellant to demonstrate the impropriety of his sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. The appellant contends that the record does not demonstrate that the trial court considered the sentencing principles. However, our review indicates that the trial court made the appropriate considerations to warrant the application of the presumption of correctness.

We must consider the following factors in the course of our de novo review: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties

---

[3] We note that Detective Collins did remember that rolling papers were found on Sutton, but he asserted that crack cocaine is not ingested by employing rolling papers.

on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the appellant's potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (Supp. 2001); see also Ashby, 823 S.W.2d at 168.

Initially, the trial court determined that the appellant was a Range II offender and the appellant does not contest this finding. We note that the appellant has more than two prior felony convictions and, accordingly, was properly considered to be a Range II offender. Tenn. Code Ann. § 40-35-106(a)(1) and (c) (1997). Furthermore, possession of more than .5 grams of cocaine is a class B felony. Tenn. Code Ann. § 39-17-417(c)(1) (1997). Thus, the trial court needed to set the appellant's sentence at "not less than twelve (12) nor more than twenty (20) years." Tenn. Code Ann. § 40-35-112(b)(2) (1997).

> Tenn. Code Ann. § 40-35-210 (Supp. 2001) provides:
> (c) The presumptive sentence for a Class B, C, D and E felony shall be the minimum sentence in the range if there are no enhancement or mitigating factors. . . .
>
> (d) Should there be enhancement but no mitigating factors for a Class B, C, D or E felony, then the court may set the sentence above the minimum in that range but still within the range. . . .
>
> (e) Should there be enhancement and mitigating factors for a Class B, C, D or E felony, the court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, then reduce the sentence within the range as appropriate for the mitigating factors. . . .

The trial court found the existence of three enhancement factors. First, the trial court determined that the appellant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1) (1997). The presentence report reflects that the appellant has been convicted of three felony offenses, one more than is necessary to establish the appellant's status as a Range II offender. Moreover, the appellant admitted at the first sentencing hearing that he has a history of smoking crack cocaine. See State v. Alexander, 957 S.W.2d 1, 7 (Tenn. Crim. App. 1997); State v. LaDaniel Ray Williams, No. 03C01-9701-CR-00002, 1998 Tenn. Crim. App. LEXIS 20, at *6 (Knoxville, January 8, 1998). Additionally, he acknowledged that he had a number of misdemeanor convictions, but he was unsure of the exact number. See State v. Maurice Garner, No. 02C01-9508-CR-00223, 1997 Tenn. Crim. App. LEXIS 476, at *18 (Jackson, May 19, 1997). We conclude that these facts are sufficient to support the trial court's application of enhancement factor (1).

The trial court also found that the appellant "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community." Tenn. Code Ann. § 40-35-114(8). At the sentencing hearing, the appellant admitted to two previous probation

revocations, thus warranting the application of this enhancement factor. See State v. Jackson, 60 S.W.3d 738, 741 (Tenn. 2001).

Additionally, the trial court afforded great weight to the fact that the appellant "possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense." Tenn. Code Ann. § 40-35-114(9). Particularly, the court was concerned that the appellant possessed a "very lethal and dangerous weapon" in order to "use in the event there was some difficulty surrounding these drugs." We also agree with the trial court's application of this enhancement factor. See State v. Johnny Wayne Tillery, No. 01C01-9506-CC-00182, 1998 Tenn. Crim. App. LEXIS 421, at *47 (Nashville, March 30, 1998).

The trial court found that there were no mitigating factors present. In his brief, the appellant "concedes that there are enhancement factors present but submits that the trial court did not correctly weigh the mitigating factors presented." Specifically, the appellant first contends that his "criminal conduct neither caused nor threatened serious bodily injury." Tenn. Code Ann. § 40-35-113(1) (1997). Our supreme court recently rejected the per se denial of this mitigating factor in cocaine cases; however, the court indicated that denying mitigation might be appropriate in certain factual situations. State v. Ross, 49 S.W.3d 833, 848-849 (Tenn. 2001); see also State v. Chianti Fuller, No. M2001-00463-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 962, at **16-17 (Nashville, December 28, 2001); cf. State v. Vanderford, 980 S.W.2d 390, 407 (Tenn. Crim. App. 1997). We believe the instant case is one such situation. The appellant was driving around with a fully-loaded 12 gauge shotgun in a neighborhood known for drug transactions. Moreover, there was "one in the chamber"; in other words, the gun was ready to fire. We conclude that these circumstances are sufficient to warrant the denial of this mitigation factor.

The appellant also contends that he "played a minor role in the commission of the offense." Tenn. Code Ann. § 40-35-113(4). We disagree. The appellant was driving the vehicle in which the drugs were found, the drugs were discovered in the seat the appellant had recently vacated, and the loaded shotgun was discovered in an area easily accessible to the appellant. These actions do not indicate that the appellant played a "minor role" in the crime.

The appellant further argues that "although guilty of the crime, [he] committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." Tenn. Code Ann. § 40-35-113(11). At the sentencing hearing, the appellant argued that, because he was a crack addict, he was suffering under the influence of the addiction. We do not find these facts sufficient to warrant the application of this mitigating factor, particularly in light of the appellant's admission that he has not pursued treatment for his drug addiction even though such treatment has been offered. By continually using crack, the appellant essentially admitted a sustained intent to violate the law, an intent that was furthered when the appellant engaged in the sale of crack cocaine.

Additionally, the appellant states that he "acted under duress or under the domination of another person, even though the duress or the domination of another person is not sufficient to

constitute a defense to the crime." Tenn. Code Ann. § 40-35-113(12). The record is completely devoid of any proof to support the application of this mitigating factor.

Finally, the appellant maintains that, under the "catch-all" provision of Tenn. Code Ann. § 40-35-113(13), the trial court should have considered that the appellant was an honorably discharged veteran and that he had a good work history. Peripherally, we note that, although the appellant's status as an honorably discharged veteran is unverified, the State conceded at the sentencing hearing that the appellant was honorably discharged from the armed services. Nonetheless, the State argued that, soon after his discharge from the military, the appellant began to commit serious felonies. Accordingly, the State contended that any mitigation would be minimized due to the appellant's quick descent into a criminal lifestyle following his honorable discharge. We agree. While the appellant's service to his country is admirable, he soon turned to a life of crime upon leaving the military. Even assuming arguendo that this factor is applicable, it is entitled to little weight. See State v. Ronald Collier, No. 02C01-9402-CC-00029, 1994 Tenn. Crim. App. LEXIS 636, at *8 (Jackson, October 5, 1994) (stating that it is not mandatory for a trial court to consider an honorable discharge); cf. State v. Joe C. Anderson, No. E1999-02485-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 707, at **21-22 (Knoxville, September 12, 2000), perm. to appeal denied, (Tenn. 2001).

Additionally, the appellant argues that he has a "fairly substantial work history." We do not find this statement to be supported by the record. The appellant argues that he has been employed in construction "on and off" for approximately the past ten years. However, the record reflects that he was incarcerated for much of the last ten years. Additionally, most of the appellant's alleged work history is unverified. Accordingly, we do not fault the trial court for failing to apply this mitigating factor. See State v. Kevin Lane Farrar, No. M2001-01370-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 337, at *22 (Nashville, April 16, 2002), application for permission to appeal filed (Tenn. 2002); see also State v. Haison Fields, No. M2000-02144-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 804, at **35-36 (Nashville, October 8, 2001), perm. to appeal denied, (Tenn. 2002). Therefore, we conclude that the trial court did not err in sentencing the appellant to seventeen years and six months incarceration.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-8-