IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 4, 2003

STATE OF TENNESSEE v. OCTAVIAN DEMETRIUS REEVES

Direct Appeal from the Circuit Court for Madison County
No. 01-757     Roger Page, Judge

No. W2002-01313-CCA-R3-CD  - Filed January 22, 2004

The defendant appeals his conviction for second degree murder and the sentence of twenty-five years. After review, we conclude that the restrictions placed on the defendant's cross-examination of the witness were within the discretion of the trial court. Further, we affirm the conviction and sentence imposed.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

Clifford K. McGown, Jr. (on appeal), Waverly, Tennessee, and George Morton Googe (at trial and on appeal), District Public Defender, for the appellant, Octavian Demetrius Reeves.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and James W. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

The defendant, Octavian Demetrius Reeves, after being indicted for the first degree, premeditated murder of the victim, Yasin Salem, was convicted on the lesser included offense of second degree murder. The defendant's motion for new trial and/or for verdict of acquittal was overruled, and this appeal timely followed.

The defendant poses three issues for appellate review:

(1) That the sentence is not supported by the record, specifically, that certain enhancement factors were inappropriate applied; and
(2) That the trial court erred in limiting the cross-examination of a witness, Reuben Fiarfield, as to two areas:
    a. A letter from the witness to the defendant, and
    b. The plea agreement the witness had made with the State.

## Factual Background

Reuben Fairchild, who was fifteen years old at the time of the victim's death, testified that he was approached by the defendant with a request to write a note for him. The defendant complained that the propriety of Royal Street Grocery had refused to sell him cigarettes because the defendant did not have an identification card. The witness wrote a note, as dictated by the defendant, which read as follows:

> Hey there. Look--Hey, look here. There's a new moneymaker in town. I'm -- I'm shoot up your store cause of your color. You ain't black so get--get the f--k out of my city. Go somewhere else. If you look at someone black--black person run. I will cuss. Don't worry--Don't worry. You won't know who it is, but you have to give it up or else pop pop bang. If that don't work just have to blow up the store and the high school. And I will hate to have -- have kill all kids cause the like of you.
>
> P.S. One day you should know I go to that school, so give it up. If you want to talk on the phone here's my number.

The back of the note read:

> I'm not scared to get locked up. You don't scare me with that gun you got. Let me shoot up your store. Please save us the--we will do this the 16th or 17th of April. Remember the JCM High School blow up. Only help save the kids. Bye bye sweet thing. Bring it on. The clock is ticking.

Fairfield stated that he added certain portions not included above by inserting the name of a person, "Shawn," and Shawn's telephone number because Fairfield thought Shawn had stolen a CD from him. Fairfield and the defendant later went to Royal Street Grocery, and Fairfield placed the note on the store's security gate.

On the day the defendant and Fairfield delivered the note, the defendant displayed a gun to Fairfield and claimed he would shoot up the store because of being refused in his attempt to buy cigarettes. The defendant also asked Fairfield to serve as his lookout on April 17th, while the defendant carried out his plan. On that date, Fairfeld obtained a bathroom pass at school and left the classroom, but became scared and returned to class without leaving school. A teacher confirmed issuing the bathroom pass and Fairfield's very brief absence.

Abdalilah Awastira, the owner of Royal Street Grocery, testified by means of an interpreter. He said that on April 17, 2001, the victim, his uncle, was with him behind the counter at Royal Street Grocery. A black male entered the store, crouched down, and fired two shots. After the first shot, the victim said "please" in English, and the second shot hit the victim in the head. The entire episode occurred within ten seconds. No other customers were in the store. The witness also recalled finding, on his door, a note, which he turned over to the police on the date of its discovery.

Officer Brock Jones, of the Jackson Police Department, stated he was dispatched to Royal Street Grocery on April 9, 2001, and was given the note by Mr. Awastira. The note was then turned over to the evidence department.

Roderick Lewis, a friend of the defendant, saw the defendant on the morning of April 17, 2001. The defendant told Lewis that "these folks are trying to get me for a murder charge." The defendant then said he was "just playing." Later that day while watching a news account of the shooting, Lewis said that the defendant's legs were shaking and that he looked scared. Lewis told of an incident when the defendant was refused the purchase of cigarettes at Royal Street Grocery, and the defendant cursed the store attendant and said he hated him.

In a written statement on April 23rd, the defendant admitted firing his gun once in the grocery. He claimed that his motivation was their refusal to sell him beer on an earlier occasion. He also claimed that a clerk had pointed a shotgun at him at the time of the shooting.

The defendant's father related that he heard the defendant make an oral statement at City Hall, wherein he admitted shooting the victim and expressed remorse.

On April 24th, the defendant gave another written statement confessing that he took an automatic-type gun inside Royal Street Grocery on April 17th. He stated there were two people in the store, and the person by the cash register pulled a gun. The defendant said he ran from the store, pointing the gun at the men behind the counter in an attempt to scare them. The gun fired during this time.

A forensic pathologist, Dr. Cynthia Gardner, stated the cause of death was multiple gunshot wounds. There were two head wounds, with one being consistent with passing through the victim's arm first. The victim's right arm sustained a pass-through bullet wound.

The jury returned a verdict of guilty of second degree murder. After a hearing, the defendant was sentenced to twenty-five years.

The defendant contends that the sentence imposed is not supported by the record. Specifically, the defendant contends misapplication of enhancement factors: (9) the use of a firearm, and (22) the selection of the victim based on skin color, both of which were given "great weight" by the trial judge. The defendant also mentions the use of enhancement number (2), that the defendant was a leader in the offense.[1] The State contends that all enhancement factors were properly applied and that number (8), a previous history of noncompliance with conditions of a sentence involving release into the community, could have also been utilized.

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial

---

[1] Effective July 2002, the legislature amended Tennessee Code Annotated section 40-35-114 by adding "terrorism" as an enhancement factor. 2002 Tenn. Pub. Acts, ch. 849, § 2(c). This is listed as factor (1), thus renumbering the previous factors as (2) through (23). See Tenn. Code Ann. § 40-35-114 (Supp. 2002). Our opinion refers to the enhancement factors as they existed at the time of sentencing as specified in Tennessee Code Annotated section 40-35-114 (1997).

court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for most offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim.

App. 2002); see Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments. Nevertheless, should there be no mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); State v. Imfield, 70 S.W.3d 698, 704 (Tenn. 2002).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

The weight given to each enhancement or mitigating factor is in the discretion of the trial court, assuming the trial court has complied with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim. App. 2002). The statutes prescribe no particular weight for an enhancement or mitigating factor. State v. Gosnell, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001). A defendant's sentence "is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years." State v. Alder, 71 S.W.3d 299, 306 (Tenn. Crim. App. 2001) (quoting State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996)).

The trial court applied five enhancement factors, with consideration of two mitigating factors, in imposing a sentence of twenty-five years. The enhancement factors applied were: (a) the defendant was a leader in the commission of the offense, (b) use of a firearm, (c) no hesitation in committing the crime when risk to human life was high, (d) previous adjudication of juvenile acts equivalent to an adult felony, and (e) selection of the victim based on color of skin. The trial court stated that "very little, if any, weight" was given to (c) and that "great weight" was given to (b) and (e).

The defendant's argument that the use of a firearm was misapplied is without merit. The use of a gun is not an element of second degree murder and is not inherent in the offense. State v. Hampton, 24 S.W.3d 823, 832 (Tenn. Crim. App. 2000).

The finding by the trial court that the defendant was a leader in the offense is more problematic. The only contribution of Reuben Fairfield, the other participant, was the penning of the threatening letter and its placement on the store's security gate. Fairfield was not at the scene when the murder occurred and did not serve any other direct or peripheral function. In the absence of anyone to "lead" during the murder, we conclude that this factor was misapplied. See State v. Alexander, 957 S.W.2d 1, 6 (Tenn. Crim. App. 1997).

The defendant contends that the motivating factor of the act was his indignation over the store proprietor's refusal to sell him cigarettes without identification. There was evidence supporting this contention in the testimony of Reuben Fairfield. The defendant, in one of his statements,

attributed his motivation to a refusal to sell him beer. These statements, however, are in contrast to the message dictated by the defendant to Fairfield and embodied in the threatening letter left at the store. The pertinent portion read, as written by Fairfield:

> Hey there. Look--Hey, look here. There's a new moneymaker in town. I'm -- I'm shoot up your store cause of your color. You ain't black so get--get the f--ck out of my city.

> The enhancement factor at issue reads as follows:

> The defendant intentionally selects the person against whom the crime is committed or selects the property that is damaged or otherwise affected by the crime <u>in whole or in part</u> because of the actor's belief or perception regarding the race, religion, color, disability, sexual orientation, national origin, ancestry or gender of that person or of the owner or occupant of that property.

Tenn. Code Ann. § 40-35-114(22) (emphasis added).

The language of the defendant's letter clearly indicates that the defendant's actions were motivated, at least in part, due to the victim's color or race. We therefore conclude that this enhancement factor was appropriately applied.

The State proposes that the enhancement factor for a history of unwillingness to comply with conditions of a sentence involving release into the community, should have been applied. Juvenile probation violations may be used to support this enhancement factor. <u>See</u> <u>State v. Jackson</u>, 60 S.W.3d 738, 743-44 (Tenn. 2001). The defendant's presentence report indicates his failure to comply with a previously imposed street law program. Additionally, Ms. Bell, a counselor with Madison County Juvenile Court Services, testified that the defendant had an unpaid restitution

balance of $1147.57. We acknowledge that, under these facts, the enhancement factor is justified, but would accord little weight to its imposition.

The trial court found two mitigating factors applicable, the youth of the defendant and his expressions of remorse. In balancing these with the enhancement factors, the court found "that the enhancement factors overwhelmingly outweigh the mitigating factors."

After a careful review *de novo*, with a presumption of correctness, we have eliminated one enhancement factor, that the defendant was a leader in the offense. Four other enhancement factors imposed by the trial court, including two given "great weight," remain. In addition, we concluded that the imposition of the factor involving an unwillingness to comply with more lenient measures in the past, was appropriate.

The wrongful application of one or more enhancement factors by the trial court does not necessarily lead to a reduction in the length of the sentence. State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000). This determination requires that we review the evidence supporting any remaining enhancement factors, as well as the evidence supporting any mitigating factors. State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002).

The statutes prescribe no particular weight for an enhancement or mitigating factor. State v. Gosnell, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001). A defendant's sentence "is not determined by the mathematical process of adding the sum total of enhancing factors present then

subtracting from this figure the mitigating factors present for a net number of years." State v. Alder, 71 S.W.3d 299, 306 (Tenn. Crim. App. 2001) (quoting State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996)).

Accordingly, we conclude that the sentence of twenty-five years is affirmed.

The defendant next contends that the trial court erred in its refusal to allow the entire letter written in jail from Reuben Fairfield to the defendant to be read or published to the jury. It is argued that this, in some manner, limited the defendant in his ability to effectively cross-examine Mr. Fairfield.

While it is undisputed that cross-examination is a fundamental right, the propriety, scope, and manner of the cross-examination is within the trial court's discretion. See State v. Dishman, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995). That discretion will not be disturbed on review except when there has been an unreasonable restriction on the right. Id.

The defendant does not identify the exact portions of the letter which were excluded to his prejudice. We have examined the record and noted that the only portions disallowed were irrelevant. The defendant does not provide us with guidance as to how this restriction served to prejudice him, and we cannot discern any abuse of the trial court's discretion. This issue is without merit.

Last, the defendant contends that the trial court erred by limiting the scope of the cross-examination of Reuben Fairfield concerning his plea agreement with the State. Although the trial court forbade the defendant from questioning Fairfield about the fact that he would not be sentenced to an adult prison, other related areas of cross-examination were allowed. The defendant was able to show that the witness would only be tried as a juvenile and that any incarceration would not extend beyond his twenty-first birthday. The defendant has failed to show that the trial court was unreasonable in its restrictions on cross-examination, and we, accordingly, conclude that this issue lacks merit.

The conviction and sentence are hereby affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE